DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1925.

---

### William P. Launtz, Appellant, v. Kinloch Telephone Company, Appellee.

1. LANDLORD AND TENANT—*construction of provision as to rent in renewal agreement.* Where the lessor of premises to a telephone company covenanted in the lease to furnish the necessary electric current to charge the lessee's electric machines and fans, and further agreed to a renewal of the lease for a second period of five years at the same rental "except on the condition the power consumption is 25 per cent more than at present, which is thirty-three hundred 'phones (that being the number assumed to be in operation on the date of the lease), then, in that event, the increased rental for the said five additional years shall not exceed that added cost of power at the current rate charged public consumers for a like quantity of consumption," the question whether a higher rent would be chargeable during the second term would depend entirely upon the number of 'phones in use at the expiration of the first term, without regard to the amount of current actually used or the cost of producing the same.

2. LANDLORD AND TENANT—*construction of ambiguous provisions of lease relating to renewals.* In construing the provisions of a lease relating to renewals, where there is any ambiguity, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so. and also upon the principle that every man's grant is to be taken most strongly against himself.

3. EVIDENCE—*admissibility of declaration by agent in absence of proof of authority to make it, or of duties involving acquisition of information as to subject matter.* Where in an action for rent the right to recover depended upon the number of telephones in use by the lessee, a telephone company, upon the leased premises, testimony of declarations by wire chiefs in the lessee's employ as to the number of such telephones in use thereon on certain dates was inadmissible, in the absence of proof of authority by the alleged declarants to make such statements, or that it was any part of their duty to know or keep a record as to the number of telephones in use.

4. LANDLORD AND TENANT—*sufficiency of evidence to show increased use of electric current by lessee warranting recovery of additional rental as stipulated in renewal agreement.* Where under an agreement for the renewal of a lease to a telephone company the payment of an increased rental was contingent upon the number of telephones in use upon the premises at the termination of the initial lease, testimony as to the number of instruments in use thereon three and four years after that date was not material to the issue and wholly insufficient to show the happening of the contingency mentioned.

5. HARMLESS AND PREJUDICIAL ERROR—*correct decision reached by erroneous processes.* The Appellate Court will not reverse a judgment because of erroneous processes in reaching it, when, if it had been the other way, a reversal on appeal would have ensued.

Appeal by plaintiff from the City Court of East St. Louis; the Hon. WILLIAM F. BORDERS, Judge, presiding. Heard in this court at the March term, 1925. Affirmed. Opinion filed August 5, 1925. *Certiorari* denied by Supreme Court (making opinion final).

WILLIAM P. LAUNTZ, for appellant.

KRAMER, KRAMER & CAMPBELL, for appellee.

MR. JUSTICE BARRY delivered the opinion of the court.
    For ten years prior to August, 1913, appellee maintained its East St. Louis Exchange and offices in a number of rooms rented from appellant. The parties entered into a new lease for the same premises for a period of five years from August 1, 1913, at a monthly rental of $222.50. Appellant agreed, inter alia, to light the premises, daily, with electricity from 7 o'clock

a. m. until midnight and for the remainder of the night with gas or electricity. He also agreed to furnish the necessary gas or electric current to charge appellee's electric machines and fans. The provision of the lease which is the basis of this suit is as follows:

"It is further agreed that at the expiration of said five years, lessee is to have the privilege of five years more at the same rental as hereinbefore specified, except on the condition the power consumption is 25 per cent more than at present, which is thirty-three hundred 'phones (that being the number assumed to be in operation August 1, 1913). Then, in that event, the increased rental for the said five additional years shall not exceed that added cost of power at the current rate charged public consumers for a like quantity of consumption."

Appellant occupied the premises and paid the stipulated rent until August, 1918. In the meantime it gave appellant notice that it would keep the premises for another five years. Nothing was said about the rent until appellee tendered $222.50 for the first month of the additional term when appellant made the claim that under the terms of the lease he was entitled to an increase in the monthly rental of $111.25 or $333.75 per month. They were unable to settle their differences in that regard and finally agreed that appellee should pay the $222.50 per month, about which there was no dispute, without prejudice to the right of either until an adjustment could be had. Under that arrangement appellee occupied the premises and paid $222.50 per month until March 1, 1923, when it sold its business to another company. Appellant brought this suit to recover $111.25 per month from August 1, 1918, to March 1, 1923, and the trial resulted in a verdict and judgment in favor of appellee.

The solution of the controversy hinges upon the meaning of the provision for an increased rental above quoted. Appellee contends that the parties expressly

agreed that the rent should continue at $222.50 per month unless the number of 'phones in use at the beginning of the second five-year term had increased more than 25 per cent of the number in use at the date of the lease. In other words that the "power consumption" referred to was to be measured by the number of 'phones in use in August, 1918, without regard to the amount of electric current actually being consumed at that time or the expense of producing the same. It is first insisted by appellant that if there was an increase of more than 25 per cent in the cost of furnishing the same amount of current the rent was to be increased accordingly, even though there was no increase in the number of 'phones in operation.

After arguing along that line at some length appellant then says that he most earnestly insists that the true construction of this provision of the lease is that if the power consumption is 25 per cent in excess of what it was under the lease covering the period from 1913 to 1918 then, in that case, he was entitled to an increase of rent if the number of 'phones operated during the extended period of the lease was in excess of 3,300. It will be seen, therefore, that he is not consistent in his contentions.

Appellant averred, in his declaration, that from and after July 31, 1918, the power consumed by appellee was more than 25 per cent greater than on August 1, 1913, based on 3,300 'phones on that date, and the added cost of power at the then current rate charged public consumers for a like quantity, by reason of which the monthly rental after July 31, 1918, was $333.75 per month as provided in the lease, instead of $222.50 per month. As we understand this averment appellant bases his right to recovery on the theory that the cost of producing the same amount of current had increased more than 25 per cent and that he was entitled to a corresponding increase in the rent.

Appellant had a large office building in which were

about fifty tenants, including appellee. Prior to the World War he generated all of the electric current required to light the entire building, to operate the elevators and to charge appellee's electric machines and never had a meter or any other method of determining how much current was used by appellee or any other tenant. That was the situation at the time the lease was executed in 1913. After this country entered the war he ceased to generate the electric current for his building and procured the same from an electric light company. He then had a meter installed for the purpose of ascertaining the amount of current used in the entire building but was never able to tell how much current was used by appellee or any other tenant.

When the lease was executed in 1913 appellant had no way of determining the amount of electric current furnished appellee or the cost of producing the same. That being the situation, the parties stipulated for an additional term of five years at the same rental except on condition the "power consumption is 25 per cent more than at present, which is thirty-three hundred 'phones." If they did not intend to measure the "power consumption" by the number of 'phones why did they say that the then present power consumption was 3,300 'phones? If they meant that the "power consumption" should be measured by the cost of production of the current why should they refer to the number of 'phones then in use? We see no escape from the conclusion that they expressly agreed the power consumption in August, 1913, was what would be required for 3,300 'phones and whether the rent would be higher after August 1, 1918, would depend entirely upon the number of 'phones in use on that date without regard to the amount of current actually used or the cost of producing the same.

As a general rule in construing the provisions of a lease relating to renewals, where there is any ambiguity, the tenant is favored and not the landlord, because

the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself. 16 R. C. L. 884; *Fergen v. Lyons,* 162 Wis. 131, 155 N. W. 935; *Stetler v. North Branch Transit Co.,* 258 Pa. 299, 101 Atl. 980; *Kaufmann v. Liggett,* 209 Pa. 87.

On the trial appellant was permitted to testify, over objection, that Mr. Chillinger, a wire chief in appellee's employ, told him in January, 1923, that appellee then had 5,000 'phones in use; that there had been an increase of 2,000 in the two years preceding that date. He was also permitted to testify that another wire chief told him in January, 1922, that appellee then had more than 5,000 'phones in use at the exchange in question. There was no other evidence offered by appellant as to the number of 'phones in use by appellee. There was no showing that the persons alleged to have made those declarations had authority, express or implied, to make such statements, nor was it shown that it was any part of their duty to know or keep a record of the 'phones in use. The alleged declarations were not made with any reference to any matter that was intrusted to their attention or consideration. The evidence was clearly incompetent and should have been excluded.

But even if it were not objectionable on that ground, it was wholly insufficient to show that more than 3,300 'phones were in use in August, 1918. The number in use at that time was the material question and not the number in 1922 or 1923. According to the contract appellee was to have an additional term of five years from August 1, 1918, at the same rental unless the power consumption had then increased more than 25 per cent of 3,300 'phones. Before appellant was entitled to an increased rental it was incumbent on him to prove that on August 1, 1918, appellee had more than 4,125 'phones in operation. He utterly failed to

offer any proof tending to support such a claim. Under the contract, as we construe it, the question of the increased cost of furnishing electric current was not involved. But even if it were, there was no competent evidence to support that theory.

Appellant simply testified that his power and light bills for the entire building had doubled. He does not say when that occurred, whether before or after August 1, 1918, nor does he show that the increase was not due to the requirements of his other tenants. The lease provided that the increased rental should not exceed the added cost of power at the then current rate charged public consumers for a like quantity of consumption. There is no competent evidence in that regard. He also says he had to run his generators seven hours a day longer than usual in order to charge appellee's electric machines because they were badly worn and out of repair. He expressly agreed to furnish appellee the current necessary to charge its electric machines without regard to their condition. There is nothing to that point.

Under the contract, as we have construed it, if appellant had recovered a verdict and judgment it would have been our duty to reverse without remanding as he is not entitled to recover. The judgment is right irrespective of the other alleged errors and it is unnecessary to consider them. This court will not reverse a judgment because of erroneous processes in reaching it, when, if it had been the other way, a reversal on appeal would have ensued. *McPike v. Luer*, 230 Ill. App. 271. The judgment is right and must be affirmed.

*Affirmed.*