KAYBILL CORPORATION, INC., *et al.*, Plaintiffs-Appellees, *v.* JOHN J. CHERNE *et al.*, Defendants-Appellants.

(No. 57555;

First District (3rd Division)—November 7, 1974.

Jerome Berkson, of Chicago, for appellants.

William J. Nellis, of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs brought an action for a declaratory judgment to declare their rights as lessees of defendants' property. Defendant Helen Cherne died subsequent to the execution of the lease. Her death was suggested, and the proceedings continued as to her son John Cherne, defendant herein. Defendant appeals from the judgment of the trial court declaring plaintiffs to be lessees for an additional term of 6 years, and entering judgment against defendant as to his forcible detainer proceedings.

In mid-November 1965, plaintiffs William Ellis and Catherine Ellis, his wife (Ellises), as lessees, entered into a written lease with the defendants, John Cherne and Helen Cherne, his mother, as lessors for the first floor of the premises at 10349 South Pulaski Road, Chicago, for use as a tavern. The lease was for a period of 6 years, commencing May 1, 1965, and provided a monthly rental of $200 for the first 3 years and $225 for the remaining 3 years. Paragraphs 7 and 10 of the rider attached to the lease provided:

"7. The lessee shall have the option of renewing the lease for an additional six years with a reasonable increase in rental.

10. The lessee must notify the lessor one month in advance of expire [sic] of lease."

Kaybill Corporation, Inc., an Illinois corporation (Kaybill), was incorporated on April 12, 1965. Catherine Ellis and Diana Ellis, her daughter, were sole stockholders. A liquor license was obtained from the City of Chicago by the corporate Kaybill and conspicuously displayed on the wall. The tavern was operated by the Ellises and their daughter under the name of The Ellis Pub. Rental payments were made by the corporation.

Defendant John Cherne lived in the building and spent four to five evenings each week in The Ellis Pub.

The Ellises testified that after the corporation was formed on or about April 15, 1965, they assigned the lease to Kaybill and tendered the assignment to Helen Cherne for written consent. Catherine Ellis testified that on or about April 15, 1965, she gave the lease and assignment to Helen Cherne and told her that the corporation was formed; and that after several days Helen Cherne handed the lease back to her with the alleged signatures of both Helen Cherne and John Cherne to the consent. John Cherne denied both signatures. A handwriting expert and the sister of John Cherne testified that the signatures were not genuine.

Defendant John Cherne testified that he had frequented The Ellis Pub four or five nights each week during the leased period and was aware of the location of the liquor license. He stated that he did not know that the license was held in the name of Kaybill. The Ellises testified that John Cherne knew of the existence of the corporation and had on several occasions discussed it, and that John and Helen Cherne were aware of the assignment of the lease to Kaybill.

The Ellises further testified that during the latter part of April 1970, John Cherne approached them and demanded a $75 increase in monthly rental for the remainder of the original term of the lease; that the parties agreed to the increase, and John Cherne agreed that the rent for the period of the option would be $300 per month; and that Catherine Ellis advised Cherne that she was exercising the option on behalf of the corporation at that time. Cherne denied having any conversation concerning the exercise of the option. He testified that he demanded an increase in rental for the year then remaining; that the Ellises agreed and made payments in the amount of $300 per month for such year, and that the Ellises had not attempted to exercise the option until he received a letter dated April 29, 1971, from the Ellises' attorney purporting to exercise the option for 6 years at a rental of $300 per month. Cherne further testified that in late April 1971, he sent a 1-year lease to the Ellises, providing for a rental of $300 per month. He testified that the lease had been rejected and that he knew Ellis would not sign it because of the option. Later, Cherne tendered a 6-year lease providing a rental of $650 per month which was rejected by the Ellises.

Kaybill, the corporate plaintiff, originally commenced this action on October 5, 1971, as assignee of the Ellises. On November 10, 1971, an amended complaint was filed wherein William and Catherine Ellis were joined as plaintiffs. The named defendants were John Cherne and Helen Cherne, his mother. The death of Helen Cherne in 1967 was suggested prior to the trial, and the proceedings continued as to John Cherne as

the surviving joint tenant. A trial was had without a jury, and on December 20, 1971, the trial court entered the judgment order from which defendant has appealed.

The judgment order contained findings which provided substantially that:

3) Kaybill failed to sustain proof as to the consent to assignment of the lease, and that the consent is invalid but is not necessary, "or in the alternative, if" necessary, defendant is estopped to deny such consent;

4) defendant received an additional $75 per month from Kaybill for a total of $900 prior to May 1, 1971, and also May 1971 payment of $300 which constituted partial performance of an oral lease between Kaybill and defendant beginning May 1, 1971 and ending April 30, 1977, at a reasonable monthly rental fixed at $300, and that partial performance takes the transaction out of the Statute of Frauds;

5) "that in the alternative to the findings in [preceding] paragraph 4" the option agreement is enforceable by Kaybill against defendant, and specific performance may be ordered, reasonable rental being fixed at $300 per month;

6) "that in the alternative to findings in [preceding] paragraphs 4 and 5 above, if as a matter of law, consent to the assignment to Kaybill" is found necessary and is further found not given, "and if defendant * * * is not estopped from denying such consent," then William Ellis and Catherine Ellis are found to have paid the additional $900 referred to above to defendant, and the Ellises are found to have made the May 1971 payment to defendant of $300, and said conduct is found to constitute partial performance of an oral lease between the Ellises and defendant, beginning May 1, 1971 and ending April 30, 1977, at a reasonable rental fixed at $300 per month, and that partial performance takes the transaction out of the Statute of Frauds;

7) "that in the alternative to the findings in [preceding] paragraph 6," the court finds that the option is found enforceable by the Ellises against defendant, and specific performance may be ordered, reasonable rental being fixed at $300 per month.

The judgment order then ordered, adjudged and decreed in substance:

1) that an oral lease for the six-year period from May 1, 1971 to April 30, 1977, exists between plaintiffs Kaybill and defendant John Cherne for a monthly rental of $300 pursuant to all other terms and provisions of the May 1, 1965 lease between the Ellises and Cherne;

2) "that in the alternative, an extended lease exists" between plaintiff Kaybill and defendant Cherne for the six-year period at a reasonable rental fixed at $300 per month pursuant to the exercise of the option in the lease dated May 1, 1965;

3) "that in the alternative, an oral lease" for the six-year period exists between William Ellis and Catherine Ellis as lessees, and John Cherne as lessor, at a reasonable rental of $300 per month pursuant to all other terms and provisions of lease dated May 1, 1965;

4) "that in the alternative, an extended lease exists" between William Ellis and Catherine Ellis as lessees, and John Cherne as lessor, for the six-year period at a reasonable rental fixed at $300 per month pursuant to the exercise of the option in the lease dated May 1, 1965; and

5) that judgment be entered in favor of William Ellis and Catherine Ellis and against John Cherne and Helen Cherne as to the forcible entry and detainer action filed by the defendants.

On January 17, 1972, defendant filed a motion to vacate the order of December 20, 1971, and for a new trial. Thereafter, on January 31, 1972, defendant filed a supplement to the previous motion, therein alleging for the first time that Kaybill was involuntarily dissolved for failure to pay franchise taxes to the State of Illinois on December 17, 1968, being more than 2 years before commencing the present action, and that Kaybill was therefore incapable of maintaining this action. On February 3, 1972, plaintiffs filed a reply, attaching an order of that date which vacated the order of dissolution with the consent of the Attorney General of Illinois. On March 23, 1972, the trial court denied defendant's motion to vacate. Defendant appeals from the orders of December 20, 1971, and March 23, 1972.

## I.

Defendant initially maintains that Kaybill, a corporation, did not commence the action within 2 years after the date of dissolution as provided by statute (Ill. Rev. Stat. 1971, ch. 32, par. 157.94), and that the judgment in favor of a dissolved corporation is a nullity since there was no party plaintiff over whom the court could exercise jurisdiction, and that the order vacating the dissolution could not cure such defect.

■■ We have consistently held that if a corporation which is delinquent in the payment of franchise taxes has started suit it may continue the prosecution of that suit by subsequent compliance with the statute. (*Jorgensen v. Baker* (1959), 21 Ill.App.2d 196, 157 N.E.2d 773; *Sternberg Dredging Co. v. Estate of Sternberg* (1953), 351 Ill.App. 514, 115 N.E.2d 557 (abstract opinion); *Sheffield Steel & Iron Co. v. The Jos. Joseph & Brothers Co.* (1925), 238 Ill.App. 45.) The test is whether or not the corporation had its corporate status restored before the expiration of the applicable statute of limitations. (*Jorgensen v. Baker, supra.*) An order vacating an order of dissolution retroactively restores the status of a corporation. It is as though the corporation were never under any legal dis-

ability. In the instant case, Kaybill was a *de facto* corporation, and the vacation of the order of dissolution was not to create a fraud or to raise a defunct corporation, but to prevent fraud. (*Continental Illinois National Bank & Trust Co. v. University of Notre Dame Du Lac* (1945), 326 Ill. App. 567, 63 N.E.2d 127.) The order vacating the order of dissolution was entered within the statutory time within which the corporation could have commenced the original declaratory judgment action, and at a time when the judgment herein had not yet become final. Therefore, Kaybill Corporation, Inc., having had its legal disability to sue removed and its legal capacity reinstated, was a proper party in whose favor a judgment could be entered.

## II.

Defendant maintains that the declaratory judgment is too vague, uncertain, ambiguous and contradictory to constitute a declaration of rights. The purpose of a declaratory judgment is to settle and fix rights of the parties. (*La Salle Casualty Co. v. Lobono* (1968), 93 Ill.App.2d 114, 236 N.E.2d 405.) In *City of Quincy v. Sturhahn* (1960), 18 Ill.2d 604, 610, 165 N.E.2d 271, the court stated that the declaratory judgment should finally and effectively decide the rights of parties on the issues presented and terminate the entire controversy between them in order to comply with the provisions of the declaratory judgment statute (Ill. Rev. Stat. 1971, ch. 110, par. 57.1), noting:

> "However, no technical form is prescribed for a declaration of rights in a suit for declaratory judgment, * * * as long as the court actually passes upon or adjudicates the issues raised by the pleadings."

(See also *Chicago Division Illinois Education Association v. Board of Education* (1966), 76 Ill.App.2d 456, 222 N.E.2d 243; and *Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill.App.2d 210, 127 N.E.2d 464.) A declaratory judgment is governed by the same rules affecting the rendition and entry of any judgment at law or in equity (*Freeport Motor Casualty Co. v. Tharp* (1950), 406 Ill. 295, 300, 94 N.E.2d 139), and must designate the parties for and against whom it is rendered or it will not be a valid final judgment. (*Hanaman v. Davis* (1959), 20 Ill.App.2d 111, 155 N.E.2d 344.) A judgment must represent the ultimate and precise determination, and in substance it must show distinctly, and not inferentially, that the matters in the record have been finally disposed of in favor of one of the litigants, or that the rights of the parties have been finally adjudicated. *Pertolanitz v. Chicago Transit Authority* (1963), 44 Ill.App.2d 256, 266, 194 N.E.2d 501; 23 I.L.P. *Judgments* § 21 (1956).

As a general rule, a judgment should not be in the alternative ex-

cept pursuant to a special statute or in actions for recovery of property. (*Pickering v. Pickering* (1959), 111 Ohio. App. 458, 173 N.E.2d 156; *State v. Ellis* (Maine Sup.Jud.Ct. 1971), 272 A.2d 357; 49 C.J.S. *Judgments* § 74, at 193 (1947).) A judgment in the alternative renders it entirely ineffectual as a declaration of rights or as an adjudication upon the same set of facts. *Auxier's Executrix v. Theobald* (1934), 255 Ky. 583, 75 S.W.2d 39.

■■ In *Department of Public Works & Buildings v. Gieseking* (1969), 108 Ill.App.2d 105, 246 N.E.2d 707, upon review of a seemingly vague and uncertain judgment for the plaintiffs, the court declined to remand the case for a new trial, and examined the record to determine if the verdict was sufficient to sustain the judgments, stating at page 109:

> "The general rule is that a judgment must designate the parties for and against whom it is rendered or it will not be a valid final judgment. [Citation.] We do not condone entry of a purported judgment which does not meet that requirement; the parties are entitled to know precisely the status of the matter and where they stand, without searching the record, once the issues have been determined. Even assuming the judgments here to be defective, on such bases we would not remand for a new trial, and if the verdict is sufficient to sustain the judgments we could affirm the lower court proceedings, granting leave to the State to move for a proper judgment on the verdicts [citation], or in the alternative could exercise our appellate and supervisory powers, (Supreme Court Rule 366(a)), to correct any technical deficiencies observed in the lower court. While the appellants may have been inconvenienced by the procedure followed, we fail to comprehend how they have in any way been prejudiced."

In the instant case, the issues have been passed upon by the trial court and judgment was rendered solely against defendant but in favor of plaintiffs, albeit alternatively for the Ellises and Kaybill. The adjudication creates an ambiguity and fails to precisely designate the party for whom the judgment is rendered or the status and legal relationship of the parties. Two possible lessees and distinct tenancies of the same premises for the same term are established. However, if the record sustains any of the alternatives, we need not remand for new trial but will exercise our supervisory power to correct any deficiency in the judgment pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1973, ch. 110A, par. 366(a)(5)).

## III.

Defendant contends that the trial court erred in finding an oral lease for a further 6-year term and that partial performance did not take it out

of the Statute of Frauds (Ill. Rev. Stat. 1971, ch. 59, par. 2). The trial court found that defendant received additional payments of $900 prior to May 1, 1971, and also the May 1, 1971 payment of $300, and that said conduct constituted partial performance to take the transaction out of the statute.

The doctrine of part performance can be invoked to remove an oral lease from the operation of the Statute of Frauds. (*Johnston v. Messinger* (1922), 226 Ill.App. 397.) Possession must be continuous; taking possession and making improvements is sufficient, but the improvement must be made under the lease relied upon, and must be both valuable and permanent. (*Meyer v. Surkin* (1931), 262 Ill.App. 83.) However, the possession of a tenant who holds a written lease is referrable to that lease rather than to a subsequent parol lease. (*Koch v. National Union Building Association* (1891), 137 Ill. 497, 27 N.E. 530.) In *Koch*, the court stated at page 501:

> "[I]t has been repeatedly held, that it is not sufficient that the party is in possession, but it must affirmatively appear that he got possession under the agreement relied on, and in part performance of the same, and it must also distinctly appear that the money was expended or improvements made under the contract of sale, and not otherwise."

■■ The mere continuance in possession, acquired or held under some other contract or right, is referrable to such contract or right, and therefore does not constitute such part performance as will take the oral contract of lease out of the operation of the Statute of Frauds. (*Morrison v. Herrick* (1889), 130 Ill. 631, 22 N.E. 537.) In *Spalding v. Conzelman* (1860), 30 Mo. 177, the court held that the mere payment of additional rent, where an agreement for a new lease is set up, is a circumstance of little importance, inasmuch as it may be referred to a year-to-year holdover after the expiration of the old lease or to other inducements to its payment. In the instant case, the Ellises testified to various initial capital improvements made prior to the alleged oral agreement of April 1970, which clearly were not made in reliance on such agreement. Plaintiffs testified that they subsequently invested in an ice machine costing $1200, but conceded that it was a removable fixture. The additional payments of $900 were made during the last year of the original lease and would be attributable to the written lease and not to the new oral lease claimed by plaintiffs. In *Anderson v. Collinson* (1939), 300 Ill.App. 22, 20 N.E.2d 980, the lessee claimed an oral agreement for successive 1-year renewals of the original written 1-year lease. Lessee purchased rye or seeding, sowed 15 acres and plowed another 20 acres of the leased property in reliance upon the oral lease. The court held that the same constituted sufficient part performance to avoid the statute.

■■■ The part performance in the instant case does not take the within oral lease out of the statute. Plaintiffs' reliance upon *Haggen v. Burns* (1956), 48 Wash. 2d 611, 295 P.2d 725, and *Latses v. Nick Floor, Inc.* (1940), 99 Utah 214, 104 P.2d 619, is not justified, the cases being distinguishable on their facts. Paragraphs 1 and 3 of the judgment rendered in favor of plaintiff Kaybill and, in the alternative, in favor of plaintiffs Catherine and William Ellis, on the basis of the existence of an oral lease, are reversed.

## IV.

Defendant next contends that the trial court erred in entering paragraphs 2 and 4 of the judgment alternatively for the plaintiffs, based upon the finding that the renewal option in the original lease was exercised.

In *Schumacher v. Fatten* (1958), 18 Ill.App.2d 387, 392, 152 N.E.2d 402, the court observed that the lease was drawn by the lessor, as in the instant case, and cited the following with approval:

> " '[T]he provisions of a lease should be most strongly construed against the lessor * * *' [and] [a] general covenant to renew a lease is sufficiently certain to be enforceable and implies an additional term for the same period as the original lease and at the same rent."

The general rule in construing provisions of a lease relating to renewals as to any ambiguity is that the tenant and not the landlord is favored. *Launtz v. Kinloch Telephone Co.* (1925), 239 Ill.App. 204, 208.

Initially, defendant argues that there was never any actual exercise of the option by plaintiffs. Catherine Ellis testified that in the conversation she and her husband had with defendant Cherne in April 1970, the option to renew was exercised on behalf of Kaybill. Both she and her husband, William Ellis, testified that they had assigned the lease to Kaybill. William Ellis also testified that in the April 1970 conversation the option was exercised. In evidence is a letter dated April 29, 1971, to defendant John Cherne from an attorney for the Ellises stating that he was enclosing a notice executed by his clients exercising the option to renew for an additional 6 years from May 1, 1971, together with the initial month's rent of $300. Also in evidence is the undated notice signed by the Ellises to defendant John Cherne exercising their option to renew. However, William Ellis testified that at the time of the letter and notice he did not tell his attorney that the business was being operated by Kaybill Corp. His testimony is not inconsistent with that of his wife who stated that the option was exercised in April 1970 on behalf of Kaybill. There is sufficient evidence to sustain the finding that the option was

exercised by Kaybill but there is insufficient evidence to sustain the finding that the option was exercised by the original lessees, William and Catherine Ellis, in their own behalf.

Defendant next argues that there did not exist an effective assignment of the lease from the Ellises to Kaybill. A covenant against assignment without the lessor's consent is for the benefit of the lessor alone and may be waived by his subsequent inconsistent conduct amounting to an estoppel. (*Wohl v. Yelen* (1959), 22 Ill.App.2d 455, 461, 161 N.E.2d 339.) In the instant case, Mrs. Ellis testified that both she and her husband executed the form assignment on the reverse side of the original lease to Kaybill; that they tendered the assignment to Mrs. Cherne for the consent of the lessor, and that she received the document a few days later with the purported signatures of John and Helen Cherne. The trial court found that there was insufficient evidence to establish the signature of Helen Cherne.

In *Clark v. Hoering-Buchholz Co.* (1929), 254 Ill.App. 60, 62, the court found that the lessor accepted rent from the purported assignee after the assignment of the lease and that such action constituted waiver of the alleged forfeiture. In *Watson v. Smith* (1913), 180 Ill.App. 289, 293, the court determined that the assignee of the lessee took open possession of the premises and paid rent directly to the lessor, and held that the receiving of the rent under those circumstances gave implied consent and constituted waiver of the provisions of the lease prohibiting an assignment without consent. See also *Webster v. Nichols* (1882), 104 Ill. 160.

■■ In the instant case John Cherne did not deny seeing the alleged assignment to Kaybill, but did deny that he and his mother signed the consent appearing thereon. He testified that for a period of 4 or 5 years he spent 4 to 5 evenings each week in The Ellis Pub. The liquor license which was issued in the name of Kaybill was displayed conspicuously on the wall above the bar. Defendant received payments of rent from Kaybill. Mrs. Ellis testified that she and her husband often discussed the Kaybill Corporation with the defendant. The assignee, Kaybill, took and was in open possession of the premises and made payments of rent directly to the defendant. Under the circumstances, the receipt of rent from the assignee constitutes a waiver of the lessor's right of forfeiture on the ground that the assignment was made without the lessor's written consent as provided in the lease. (*Johnson v. Hotel Lawrence Corp.* (1929), 337 Ill. 345, 349, 169 N.E. 240.) Since an assignment of a lease by the lessee carries with it a clause giving the lessee the option to renew the lease, as well as all other clauses in the original lease, Kaybill could have effectively exercised the option to renew through the Ellises.

(*Sutherland v. Goodnow* (1884), 108 Ill. 528, 534.) The trial court properly found that defendant Cherne waived the forfeiture provision and the written consent to assignment and was estopped to deny the validity of the assignment.

Defendant next argues that the option to renew is too vague and uncertain to be enforceable, relying upon *Streit v. Fay* (1907), 230 Ill. 319, 82 N.E. 648. In that case the lease provided that the lessee had the "privilege of 5 years longer, he paying additional rent on revaluation now fixed at $500." The supreme court held that the provisions were too vague and indefinite to constitute a valid covenant for renewal in that no provision was made as to when or how the revaluation should be determined.

■■ In the instant case, the option provides "for an additional 6 years with a reasonable increase in rental." Its validity depends upon whether or not it fixes a sufficiently definite standard or method for determination of the rental. The facts herein are distinguishable from the case of *Sterenberg v. Beach* (1920), 219 Ill.App. 68, which held that the provision "the lease to be extended if both parties agree" was too vague and indefinite to constitute a valid covenant for renewal since it is only in case the parties evidence their ability to agree to renew that there can be such a renewal. Here, however, the trial court has found that the parties had agreed and that the lease provided "a reasonable increase." In *Edwards v. Tobin* (1930), 132 Ore. 38, 284 p. 562, the Supreme Court of Oregon held a similar renewal provision enforceable as providing a sufficiently definite standard or method for the determination of rental. The court there stated that it was not making a new agreement in determining what is "reasonable" but rather was compelling that which was plainly contemplated by the parties. In *Playmate Club, Inc. v. Country Clubs, Inc.* (1970), 62 Tenn. App. 383, 462 S.W. 2d 890, the Court of Appeals of Tennessee went considerably farther in holding a renewal clause in a lease leaving only the rent to be fixed by agreement, to imply a reasonable rental figure—a figure which can be ascertained with reasonable certainty, thus meeting the test of "definiteness"—and that such a renewal clause is valid and enforceable. Accordingly, the option in the instant case, in providing for a reasonable increase in rental, sets forth a sufficiently definite standard to determine the rental, and is not vague or uncertain.

Defendant next argues that the option agreement makes no provision for the manner or form of the notice of the intent to renew. In *Cusack v. The Gunning System* (1903), 109 Ill.App. 588, a lease of a building wall for advertising purposes granted the privilege of renewal on like terms but did not provide for any notice. The lease expired on Sunday;

lessee appeared on Saturday but the office of the lessor was closed. On Monday, the next business day, he again appeared to request renewal, which the court there held to be sufficient. Where notice is required by a contract and nothing is said as to the manner of notification, it has been held that it may be made by parol. (66 C.J.S. *Notice* § 16, at 656 (1950).) In *Anderson v. Dodsworth* (1920), 292 Ill. 335, 338, 127 N.E. 43, a lease granted lessee a privilege of extending the lease without providing for the notice to be given to the landlord. The court there stated that for the lessee to avail himself of the option to extend, it was necessary to give notice in some way of his election during the original term. In *Butz v. Butz* (1973), 13 Ill.App.3d 341, 299 N.E.2d 782, the court considered a lease which contained an option to renew and contained no statement of the time or method of renewal. In finding that no notice whatsoever had been given, the court cited with approval *Vincent v. Laurent* (1911), 165 Ill.App. 397, which held that where the lessee has an option to renew a lease he should notify the lessor before the time expires, whether he elects to renew. The facts in the instant case are similar to those in *Darling v. Hovan* (1884), 53 Mich. 599, 19 N.W. 545, where the court held that inasmuch as there was no agreement in the lease as to whether the notice was to be oral or in writing, it might be shown either way, the same as any other fact not required to be in writing, and that there was no necessity for any formal tender of either lease or written notice. The court stated that the law never requires useless formality under such circumstances unless expressly required by the language of a statute or the agreement of the parties or when the same is made the basis of some substantial proceeding in the attainment of justice. We have heretofore held the option to renew to be valid and enforceable as a covenant. The manner of exercising the option was not specified; nevertheless, there is sufficient evidence that the option was exercised on behalf of Kaybill by the Ellises during the April 1970 conversation with defendant Cherne.

■■ Defendant, however, finally argues that the testimony of plaintiffs that they exercised the option to renew in their conversation of April 1970 with defendant Cherne is an attempt by parol to alter and vary the terms of the written instrument in violation of section 2 of the Statute of Frauds. (Ill. Rev. Stat. 1971, ch. 59, par. 2.) Where the extended term of the lease is fixed in the original lease and comes into existence by the exercise of the option and the giving of the required notice, lessee holds for the extended term by virtue of the original lease which is in writing and satisfies the statute. (*Fuchs v. Peterson* (1925), 315 Ill. 370, 146 N.E. 556.) This rule may apply even where the notice of intention to exercise the option is verbal. (*Economy Stores, Inc. v.*

*Moran* (1937), 178 Miss. 62, 172 So. 865, 866, 37 C.J.S. *Frauds, Statute of,* § 113, at 606 (1943).) Inasmuch as the instant written lease provides for its renewal for an additional term at the option of the lessee, the exercise of the option is not affected by the statute. The proof of conversations did not alter or vary the terms of the original lease.

## V.

■■ Defendant next contends that the trial court arbitrarily fixed the rental at $300 per month for the extended lease for the period from May 1, 1971 to April 30, 1977, without any hearing as to reasonableness and contrary to the evidence. Plaintiffs in their amended complaint alleged that $75 per month increase is a reasonable increase. Defendant in his answer admitted offering a 1-year lease at a rental of $300 per month, and admits that he considered $75 a reasonable increase for that period of time. Defendant did not expressly deny the reasonableness of a $75 increase per month for a total of $300 per month, for the 6-year option term. The only evidence offered by defendant that $300 was not reasonable was a 6-year lease providing for a $650 per month rental which defendant tendered to plaintiffs some four months after the expiration of the original 6-year period of the lease. The Ellises testified that during the April 1970 conversation with defendant Cherne they agreed to pay $300 per month, being an increase of $75 per month, for the remaining 1 year of the original term, in consideration of defendant Cherne's agreement that the rental during the renewal term would be $300 per month. The trial court saw fit to believe the testimony of the Ellises concerning the reasonableness of the monthly rental and the agreement of the parties for the option renewal term. The payment and receipt of the increased rental during the remainder of the original term substantiates the agreement reached by the parties that $300 per month would be the rental for the option renewal term. The trial court was not required to conduct a further hearing as to reasonableness of the increase of rental for the option term if it believed the testimony of the Ellises and the evidence established that defendant Cherne had agreed to the sum of $300 in April of 1970. While defendant denied such agreement, the trial court so found. The trier of fact has had the opportunity to observe the demeanor of the witnesses and has determined the testimony of the Ellises to be more credible than that of Cherne. (*Hill v. Meister* (1971), 133 Ill.App.2d 678, 273 N.E.2d 643.) We cannot say that the findings of the trial court as to the reasonable increase of rental are palpably contrary to the manifest weight of the evidence. *Swan v. Allstate Insurance Co.* (1967), 89 Ill.App.2d 205, 213, 232 N.E.2d 491.

## VI.

Finally, defendant contends that plaintiffs are chargeable with knowledge that the signatures of John Cherne and Helen Cherne appearing on the consent to assignment were forgeries and that plaintiffs should be precluded from any equitable relief by the doctrine of unclean hands. Defendant relies on *Wilson-Broadway Building Corp. v. Northwestern Elevated R.R. Co.* (1922), 225 Ill.App. 306, and *Blount v. Chicago Railway Equipment Co.* (1926), 242 Ill.App. 69, to support his argument that equity will not aid a person in the preservation of his rights without a showing that he is in lawful possession of such rights.

The maxim that he who comes into equity must come with clean hands has no application where the facts do not show a case of unclean hands. (See *Western-United Dairy Co. v. Nash* (1937), 293 Ill.App. 162, 164-165, 12 N.E.2d 47.) Upon a proper showing, the equitable doctrine would preclude relief. An examination of the record does not disclose any evidence to indicate that the plaintiffs had any knowledge or in any way caused a forgery of the signatures of John Cherne or Helen Cherne. Defendant has not designated any evidence to justify a finding of forgery by the Ellises, and our review of the record has disclosed none.

■■ The testimony related only to the question of whether the signatures were those of the purported signers. The trial court stated that possibly the lessees were under a belief that the consent had been signed by somone who was authorized, adding, "I am not convinced that Helen Cherne signed it. Therefore, I hold as a question of fact, not that there is a forgery, but I simply say that they have not maintained their burden of proof." In ruling on the defendant's post-trial motion, the trial judge again stated: "I expressly held and reaffirm that holding that there is no proof that the plaintiffs forged anything * * *." The finding is not contrary to the evidence. Therefore, the doctrine of unclean hands can have no application.

## VII.

No question has been raised or argued on appeal as grounds to reverse paragraph 5 of the judgment entered in favor of William Ellis and Catherine Ellis and against John Cherne and Helen Cherne as to the forcible entry and detainer action filed by defendant. That paragraph of the judgment is therefore affirmed. See *Flynn v. Vancil* (1968), 41 Ill.2d 236, 242, 242 N.E.2d 237.

Plaintiffs, in their answering brief and by separate motion in this court, have moved for dismissal of this appeal. As grounds, plaintiffs have urged that defendant by voluntary and continued acceptance of the benefits of the judgment order entered by the trial court has forever

waived and released all claims of error and is estopped from maintaining this appeal. The motion was taken with the appeal. However, in light of the preceding discussions, it is not necessary to further consider the question.

In our judgment, predicated upon a review of the record, we believe the evidence is sufficient to sustain and to affirm paragraph 2 of the judgment of the trial court that an extended lease exists between Kaybill Corporation as lessee, and John Cherne as lessor, for the 6-year period from May 1, 1971 to April 30, 1977, at a reasonable rental fixed at $300 per month, pursuant to the exercise of the option in the original lease dated May 1, 1965, between John and Helen Cherne and William and Catherine Ellis.

Accordingly, paragraph 2 of the judgment declaring an extended lease with Kaybill and defendant for the 6-year term at a rental of $300, and paragraph 5 of the judgment as to the forcible entry and detainer action are affirmed. Paragraphs 1, 3 and 4 of the judgment stated in the alternative are reversed.

Affirmed in part; reversed in part.

DEMPSEY and McGLOON, JJ., concur.