**Eurotex (Saipan), Inc.,**
Plaintiff/Appellee,
v.
Manuel D. **Muna**,
Defendant/Appellant.
Appeal No. 94-007
Civil Action No. 92-0443
May 23, 1995

Argued and Submitted March 14, 1995

Counsel for appellant: Reynaldo O. Yana, Saipan.

Counsel for appellee: Eric S. Smith, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and MACK, Special Judge.

VILLAGOMEZ, Justice:

Manuel D. Muna appeals from a Superior Court order granting summary judgment to Eurotex (Saipan), Inc. The court ordered Muna to specifically perform the option contained in a fifty-five year "Ground Lease and Option to Lease."

We have jurisdiction under 1 CMC § 3102(a). We affirm.

## ISSUES & STANDARD OF REVIEW

Muna presents two issues for our review:
I. Whether the trial court erred in granting sum-

mary judgment in favor of Eurotex. We review this question of law de novo.[1]

II. Whether the trial court erred in ordering Muna to specifically perform the option. Specific performance is an equitable remedy. We review the trial court's exercise of its equitable powers for an abuse of discretion.[2]

## UNDISPUTED FACTS

■ The trial court did not set forth any undisputed facts or make conclusions of law in its order granting summary judgment.[3] The following undisputed facts, therefore, were sorted from the pleadings and papers presented to the trial court.

In 1985, Muna told Rex Kosack, trade counsel in the Governor's office, that he was seeking someone to lease about 13,276 square meters ("m$^2$") of his land in San Vicente, Saipan. Kosack told Trevor E. Boucher, president of Eurotex, about the land. As trade counsel, Kosack "assisted in negotiating prices for . . . investor[s],"[4] including Boucher.[5]

At approximately 6:00 a.m. on April 17, 1987, Muna, Boucher, Kosack, and a notary public met at the Saipan airport. Boucher and Muna had not spoken to each other prior to this meeting. They proceeded to sign a document entitled "Ground Lease and Option to Lease" ("Lease"), which had been drafted by attorney Tim Bellas. Muna, who speaks and reads English,[6] thereby agreed to lease 6,500 m$^2$ of his land to Boucher for fifty-five years for a total of $65,000.[7]

Page two of the twenty-three page Lease provides:

1.1 _Option to Lease Remainder_. For the additional sum of . . . $3,250,00 . . . [Muna] grants to [Boucher] an option to lease the remainder of the . . . parcel or any portion thereof for a like period of . . . 55 . . . years, said period to commence from the date the option is exercised.

1.1.1 _Duration of Option_. The term of the option shall be for a period of . . . 24 . . . months from the date that this Lease is effective.

1.1.2 _Terms of Option_. Upon exercise of the option to lease . . . , the lease shall be under the same terms and conditions as provided for herein, except that the rental shall be either . . . $10.00 . . . per square meter for the entire 55 year period, or . . . $1.00 . . . per square meter per year.[8]

The last clause of the Lease provides, in relevant part:

LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN AND, BY EXECUTION OF THIS LEASE, SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO, THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.

THIS LEASE HAS BEEN PREPARED FOR THE LESSEE AND MAY BE SUBMITTED BY THE LESSOR TO HIS ATTORNEY FOR HIS APPROVAL. NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE LESSEE AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS LEASE OR THE TRANSACTION RELATING THERETO; THE PARTIES SHALL RELY SOLELY UPON THE ADVISE [sic] OF THEIR OWN LEGAL COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS LEASE.[9]

---

[1] _Santos v. Santos_, 4 N.M.I. 206, 209 (1995).

[2] _Pangelinan v. Itaman_, 4 N.M.I. 114, 117 (1994).

[3] The trial court need not identify the undisputed facts, if any, or make conclusions of law when ruling on a motion for summary judgment. _See_ Com. R. Civ. P. 52(a). However, for purposes of appeal, it is immensely helpful if the trial court sets out the undisputed facts and makes conclusions of law, as these enable us more accurately to assess the court's decision. _Cf._ _Olopai v. Fitial_, 3 N.M.I. 101, 107 (1992) (one purpose of findings of fact is to assist the appellate court on review).

[4] _Supplemental Excerpts of Record_ at 156.

[5] _Id._ at 157, 159.

[6] _Id._ at 14, 59.

[7] _See_ Lease at 1, 3 and Answer at 2 _in_ Excerpts of Record.

[8] Lease at 2, clauses 1.1-1.1.2, _in_ Excerpts of Record.

[9] _Id._ at 22, cl. 51.

On May 21, 1987, Kosack, by this time counsel for Eurotex, wrote Muna one check on behalf of Eurotex for $50,000 and one for $18,225. Muna accepted and cashed both checks.

By written assignment dated June 18, 1987, Boucher assigned Eurotex all of his rights in the Lease. During the three months that followed, Eurotex built a garment factory and barracks on the leased land.

During April, August, and September 1988, Eurotex wrote Muna three checks for $20,000, $20,000 and $25,000, respectively. Muna accepted and cashed each check.[10] These payments were for the lease, under the option, of the other half of the land.

The record shows that at about this time, Eurotex took possession of the portion of land covered by the option and built a number of structures and sewage facilities on it. In 1988, Eurotex put a security fence around the perimeter of the entire 13,276 m$^2$ of land. Muna did not object to any of these improvements.

In January 1992, Eurotex wrote Muna a check for $2,789. Muna accepted and cashed it.[11]

In a letter dated November 21, 1991, Eurotex asked Muna to verify in writing that it held a valid lease of the second half of Muna's land. On March 20, 1992, Eurotex requested that Muna sign a "Superseding Ground Lease" that included the second half of Muna's property under the same conditions and terms as the original Lease. Muna refused to sign any new documents.

There is no document evincing an exercise by Eurotex of its option to lease the balance of Muna's land. Muna had dinner, though he did not recall when, with two Eurotex representatives, one of whom he remembered as Tommy Lee. He did not remember the other person's name. The option was one topic of discussion at this meeting.

## PROCEDURAL BACKGROUND

In April 1992, Eurotex sued Muna for specific performance of the option and attorney's fees pursuant to the Lease. Eurotex filed a motion for summary judgment in November 1993 based on the pleadings, a sworn declaration by Lee, Muna's deposition, and various exhibits including Muna's written answers to interrogatories. Muna submitted an opposition to Eurotex's motion without counter-affidavits or other documents. He did,

however, refer to his deposition testimony.[12] Eurotex filed a reply which included a sworn declaration by Kosack. By written order, the Superior Court granted Eurotex's motion. Muna timely appealed.

## ANALYSIS

### I. Summary Judgment

 A reviewing court will affirm a grant of summary judgment if, viewing the evidence and inferences in favor of the non-moving party, no genuine issue of material fact appears and the moving party was entitled to judgment as a matter of law.[13] Eurotex, the claimant seeking specific performance, bore the burden of proving the existence of a valid, enforceable, and properly exercised option. On its motion for summary judgment, therefore, Eurotex had the burden of establishing the absence of a genuine issue of material fact as to its prima facie case.[14] Once Eurotex did so, it became Muna's responsibility to set forth specific facts which were admissible in evidence and showed "a genuine issue for trial."[15]

██ A "genuine" dispute exists "'if the evidence is such that a reasonable jury could return a verdict for the

---

[10] Excerpts of Record at 93-95.

[11] *Id.* at 96.

---

[12] We decline to follow Eurotex's suggestion that the grant of summary judgment should be affirmed solely on the ground that Muna failed to file counter-affidavits with his opposition. Under Com. R. Civ. P. 56(e):

> The court may permit affidavits to be supplemented *or opposed by depositions, answers to interrogatories,* or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits *or as otherwise provided in this rule,* must set forth specific facts . . . .

(Emphasis added.)

[13] *Santos,* 4 N.M.I. at 209.

[14] *See* Com. R. Civ. P. 56(c); *Santos,* 4 N.M.I. at 210.

[15] Com. R. Civ. P. 56(e).

non-moving party.'"[16] If the evidence set forth by Muna was "merely colorable . . . or [was] not significantly probative . . . summary judgment may be granted."[17]

## A. *Eurotex's Prima Facie Case*

■ Eurotex presented the trial court with evidence including: the signed and notarized Lease; proof that it paid the rent in full for the first half of Muna's property, and the consideration for the option pursuant to the terms of the Lease; proof that it tendered and Muna accepted an additional $65,000 during the summer of 1988; and proof that Eurotex took possession and control of the entire 13,276 m² of Muna's land and built improvements on it. Muna conceded that he voluntarily signed the Lease and believed at the time that he was entering into a legally binding agreement.

In the sworn declaration submitted by Eurotex, Kosack stated that, as trade counsel, he did not represent real estate agents, attorneys, or land owners, including Muna, who sent him descriptions of land and prices desired.[18] He did not act as an attorney or agent for any such persons, and he rejected all offers of fees.[19]

By the time Muna signed the Lease, Kosack maintained, Muna "had negotiated at length the rent term of his lease and the option to lease, so he fully knew the terms."[20] Specifically, Kosack contacted Muna to relay Boucher's offer of $65,000 for a fifty-five year lease of the first half of the land and an option for the second half. According to Kosack, Muna agreed to the offer and suggested three alternatives for structuring the option.[21] One suggestion was for Muna to sell an option of the second half of his property for five percent of the lease value, which was $3,250. The rent, if this option were exercised, would be $65,000. Boucher chose this alternative, and Kosack communicated Boucher's decision to Muna.[22]

The checks written by Kosack in April 1987 totaled $68,225. Sixty-five thousand dollars of this amount constituted rent for Eurotex's lease of the 6,500 m², and $3,225 was consideration for the option.

Eurotex also submitted an affidavit by Lee, who stated that he and another Eurotex representative had dinner with Muna on April 18, 1988, to discuss how payment for the lease of the property under option should be made. Lee told Muna that Eurotex "had exercised" the option.[23] Lee and Muna agreed that rent totaling $65,000 would be paid in three installments, one in the amount of $20,000 the following day, one in the amount of $20,000 in August 1988, and one in the amount of $25,000 in September 1988. "At this dinner meeting Mr. Muna never raised the question of the lack of existence of an option or the amount of money that Eurotex was paying for the optioned property."[24] Eurotex prepared the first check for Muna the following day, April 19, 1988. The three checks issued to and cashed by Muna during the summer of 1988 totaled $65,000 and constituted full payment of the rent for the second half of Muna's land.

We conclude that Eurotex met its burden of setting forth facts that, if uncontroverted, entitled it to summary judgment under Com. R. Civ. P. 56. We now turn to Muna's allegations purportedly showing the existence of a genuine issue for trial.

## B. *Muna's Response*

■ Muna asserts that there are issues of fact which should have defeated Eurotex's motion for summary judgment. Our review of the record shows otherwise. Muna's contention that there are issues of fact is based on conclusory statements rather than facts. He simply denies the facts established by Eurotex. "Mere conclusions will not suffice"[25] to defeat Eurotex's prima

---

[16] *Borja v. Rangamar*, 1 N.M.I. 347, 355 (1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986)).

[17] *Anderson*. 477 U.S. at 249-50, 106 S. Ct. at 2510-2511. 91 L. Ed. 2d at 212 (internal citations omitted).

[18] Supplemental Excerpts of Record at 156.

[19] *Id.*

[20] *Id.* at 159.

[21] *See id.* at 157-58.

[22] *Id.* at 158.

[23] *Id.* at 24.

[24] *Id.*

[25] *Santos*, 4 N.M.I. at 211. Additionally, Muna made allegations of fraud in his opposition to Eurotex's motion for summary judgment. He did not, however, raise the defense of fraud or fraudulent misrepresentation in his answer. Thus, his fraud argument is waived. *See* Com. R. Civ. P. 8(c), 12(b).

facie case.

The first matter that Muna claims raises an issue of fact was his belief that he was renting his land for $100 per m². Muna asserts that this belief stems from the single statement he made to Kosack to the effect that he wanted to rent his land for $100 m². However, Muna makes no allegation that either he or Kosack negotiated to lease his property for that price. On the contrary, the Lease clearly states on page one, paragraph two, and page three, clause five, that one-half of Muna's land was being leased for a total of $65,000. Additionally, the Lease specifies that Muna was to receive $3,250 for the option to lease the other half of his land. In fact, Muna received the $65,000 and all but $25 of the $3,225 within five months of signing the Lease. He received another $65,000 during the summer of 1988.

The record does not show that, prior to 1991 when Eurotex sought certification that it was the holder of a valid lease of the whole lot, Muna ever sought from Eurotex the balance of the $1,000,000 which he now claims he thought he would receive under the Lease. If Muna truly believed that he was entitled to $1,000,000 under the Lease, he would have acted accordingly during the three year period between 1988 and 1991.

The second conclusory statement which Muna claims raises an issue of fact is that he believed Kosack was his attorney at the time he entered into the Lease. Eurotex, through Kosack's sworn statement, showed that Kosack was not acting as attorney for Muna. Muna fails to allege any facts contradicting this showing. For instance, Muna does not assert that he paid Kosack attorney's fees for negotiating the Lease on his behalf, having the Lease drafted, or any other legal work done on his behalf. Nor does Muna claim that Kosack was permitted to represent him privately while Kosack was a full-time employee of the NMI government.

Muna's third conclusory statement which he asserts raises an issue of fact is that Kosack acted as an agent both for him and for Eurotex during the lease negotiations. Thus, when presented with the Lease at the airport, Muna relied on Kosack and accepted Kosack's statement that "everything's fine" with respect to the Lease, and he signed the Lease without reading it. Again, Eurotex established through Kosack's sworn statements that Kosack did not act as Muna's agent. Muna has not alleged any facts contradicting this showing. Muna makes no factual allegations, for instance, as to when, how, and under what circumstances the purported agency was created, and how Kosack was to be compensated for his services as an agent.

██ Fourth, Muna denies knowing that the Lease contained an option to lease the second half of his property. He attempts to blame Kosack for his failure to learn about the option. However, he does not allege any facts to support his conclusion that the responsibility for learning about the contents of the Lease fell upon Kosack. The Lease specifically states on its face that it is a "Ground Lease and *Option to Lease*" (emphasis added). The provision regarding the option to lease appears on the very next page, page two. If Muna was mistaken about the contents of the Lease, it was because he chose not to further inform himself about the document's contents. Such "conscious ignorance" cannot be used as grounds to avoid an otherwise valid and binding lease agreement.[26]

Muna argues that, based on the above conclusory statements, the trial court erred when it granted summary judgment and ruled that the option in the Lease should be specifically enforced. We find no merit in Muna's arguments, and hold that he failed to establish the existence of a genuine issue of material fact as to the validity and enforceability of the option. We now turn to the question whether Eurotex properly exercised the option and should be granted a decree of specific performance.

## II. Proper Exercise of the Option

██ A party that requests specific performance of an option must establish that he or she has complied with the terms of the agreement. Here, Eurotex presented evidence that it: tendered and Muna accepted $3,225 as consideration for the option; notified Muna that it was exercising the option in April 1988, well within twenty-four months of the effective date of the Lease; established with Muna that rent totaling $65,000 would be paid for the lease of the second half of the land; tendered and Muna accepted checks totaling $65,000; and took possession of, and built improvements on, the second half of the property.

██ Muna advances three arguments to show the existence of disputed issues of material fact as to whether Eurotex exercised and performed under the option. First, the Lease does not prescribe a particular form of notice for exercise of the option. It is undisputed that Eurotex did not give Muna *written* notice, within the twenty-four month term of the option, that it was exercising the option. Muna asserts, therefore, that the option was never exercised.

An option, where supported by consideration, constitutes an irrevocable offer by the offeror. The option ripens into a bilateral contract when the offeree

---

[26] *See* RESTATEMENT (SECOND) OF CONTRACTS § 154 cmts. a, c (1981).

properly accepts it.[27] "Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances."[28] Thus, notice may be given verbally.[29]

Here, it is undisputed that Muna met with Lee and another Eurotex representative in April 1988, and that the option was raised as a topic of discussion during their meeting. Eurotex presented Lee's sworn statement that, during this meeting, he notified Muna that Eurotex was exercising the option. In response, Muna does not argue or present evidence that Eurotex's oral exercise of the option was unreasonable. Rather, he attempts to refute Eurotex's evidence by denying it. As discussed above, mere denials are insufficient to establish the existence of an issue of material fact in the context of summary judgment. This is particularly true here, where Muna's subsequent acts show that he knew of Eurotex's exercise and agreed to a price of $65,000. Specifically, without complaint, Muna both accepted and cashed the checks tendered by Eurotex, and observed that Eurotex had exercised dominion over his entire piece of property.

Muna next contends that, even if oral exercise of the option was permissible under the terms of the Lease, this exercise violated the Statute of Frauds. As a matter of law, this argument has no merit.

Under the Commonwealth Statute of Frauds,

> No estate or interest in real property other than for leases for a term not exceeding one year, nor any trust or power in any manner relating thereto, can be created, granted, assigned, surrendered, declared or otherwise transferred except by operation of law, or by written conveyance or other written instrument subscribed by the party creating, granting, assigning, surrendering, declaring, or transferring the same, or by the party's lawful agent authorized in writing.[30]

Muna asserts that Eurotex's exercise of the option constituted a declaration of the creation or transfer of an interest in real property. He reasons that exercise of the option, therefore, had to be in writing.

Generally, verbal notice of acceptance of an option *for renewal* of a written lease does not violate the Statute of Frauds.[31] The theory behind this rule is that the written lease embodies the terms and conditions of the contract, and the notice of acceptance serves merely "to make the original lease operative for the renewal period."[32] Although the option in the present case provides for the lease *of an additional portion* of the premises described in the original Lease, the same theory applies. The Lease is in writing, and it contains the option. Furthermore, the language of the option makes explicit that the lease of the remainder of Muna's property "shall be under the same terms and conditions as provided for"[33] in the original Lease. Thus, when Eurotex exercised the option, it became the holder of a lease of the second half of the lot by virtue of the original Lease, which satisfies the Statute of Frauds.[34]

Muna's final argument concerns the price term under the option. The option does not include a set price term, but instead sets forth two specific, alternative prices: "[T]he rental shall be either ten dollars ($10.00) per square meter for the entire 55 year period; or one dollar ($1.00) per square meter per year."[35] Muna contends, therefore, that the option should not be specifically enforced on the grounds that a disputed issue of material fact exists as to whether the parties agreed on a rent figure for the second half of the land.

As previously discussed, Eurotex presented evidence that, during their meeting in April 1988, Lee and Muna agreed on a rental price of $65,000 for the second half of Muna's property. Muna concedes that he met with Lee and that the option was mentioned during their discussions. It is undisputed that Muna cashed the $65,000 in checks that Eurotex tendered to him during the course of the four months that followed in 1988. Nevertheless, Muna denies that he agreed to a price of $65,000. Again, mere denials will not suffice. Muna has not

---

[27] *See Diamond Hotel, Inc. v. Matsunaga*, 4 N.M.I. 213, 217 (1995) (an option contract's primary function is to limit promisor's power of revocation) (citing RESTATEMENT (SECOND) OF CONTRACTS § 25 cmt. d (1981)), *aff'd*, 99 F.3d 296 (9th Cir. 1996).

[28] RESTATEMENT (SECOND) OF CONTRACTS § 30(2) (1981).

[29] *See* 8A George W. Thompson, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 4445 (John S. Grimes ed., 1963) (discussing options to purchase land).

[30] 2 CMC § 4912.

[31] *See Gruber v. Castleberry*, 533 P.2d 82, 83 (Ariz. Ct. App. 1975).

[32] *Id.*

[33] Excerpts of Record at 69.

[34] *Cf. Kaybill Corp., Inc. v. Cherne*, 320 N.E.2d 598, 608 (Ill. Ct. App. 1974) (option to renew lease).

[35] Excerpts of Record at 69.

alleged facts that, for example, between September 1988 and November 1991, he ever objected to receiving only $65,000 from Eurotex.

We conclude that there is no issue of material fact as to the sufficiency of Eurotex's exercise of and performance under the terms of the option. The trial court did not err in granting summary judgment in Eurotex's favor.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the entry of summary judgment in favor of Eurotex.