POWELL *v.* BECK.

1. SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF GOING CONCERN.
   Written communication to plaintiffs' attorney by defendants' attorney containing alternative offer to pay plaintiff a stated sum for his interest in a convalescent home as a going concern and by way of settlement of present lawsuit, or to take a different sum for their interest and an invitation to negotiate on such basis and written acceptance of latter alternative *held,* not an offer subject to specific enforcement even when provision as to negotiation is disregarded, where the business involved was operated either as an informal joint venture or partnership, in view of omission to state what it was proposed to buy or sell, what liabilities were to be assumed, disposition to be made of obligations as to past services, current profits and income tax thereon, date of consummation, instruments of transfer involved, and inclusion of name, good will, and cash on hand.

2. SAME—SALE OR PURCHASE OF INTERESTS IN GOING CONCERN.
   The complexities of the sale or purchase of interests in a going business of today does not permit the application of general principles of contract law without consideration of the facts of business life when suit is brought for the specific performance of an alleged contract for the sale of interests in such going concern.

Appeal from Wayne; Kaufman (Nathan J.), J. Submitted January 12, 1962. (Docket No. 31, Calendar No. 48,999.) Decided May 18, 1962.

Bill by Vance D. Powell against Gilbert F. Beck, doing business as Jefferson Convalescent Home, and

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 49 Am Jur, Specific Performance §§ 15, 16, 22 *et seq.*
Specific performance of a contract as a matter of right. 65 ALR 7.

Frank Sliwinski for accounting and determination of partnership interests and rights. Cross bill for dissolution. Supplemental bill by plaintiff, based on negotiation during pendency of suit, for specific performance of defendants' agreement to sell interests in partnership. Decree of specific performance for plaintiff. Defendants appeal. Reversed and remanded.

*Sebastian A. Buffa,* for plaintiff.

*Alexander J. Jemal, Jr.,* for defendants.

SOURIS, J. Plaintiff and the 2 defendants had been engaged in the operation of a nursing home in Detroit. Disagreements between them resulted in this chancery suit for an accounting, the appointment of a receiver, injunctive relief and other relief incident thereto. While this suit was pending, the parties and their counsel met in October of 1959 for the purpose of discussing settlement. After that meeting, the following letters were exchanged between counsel for the respective parties:

"November 2, 1959

"Mr. Francis D. Cooley
14420 East Jefferson Avenue
Detroit 15, Michigan
            "Re: Powell *v.* Beck, *et al.*
"*Dear Mr. Cooley:*

"We have discussed this matter further with Dr. Beck and Mr. Frank Sliwinski. They have authorized me to advise you that they would pay to Mr. Powell the sum of $10,000 in cash for his interest in the Jefferson Convalescent Home and by way of settlement of the present lawsuit; or they will sell to him for the sum of $30,188.33.

"If Mr. Powell is interested in negotiating a settlement of the present lawsuit on this basis, we will be

very pleased to go into the matter further with you.

"Very truly yours,
BALLANTINE, KENNEDY & HUHN
/s/ *Carl W. Huhn*
Carl W. Huhn"

cwh/cf

"November 25, 1959.

"Mr. Carl W. Huhn
c/o Ballantine, Kennedy and Huhn
Attorneys-at-Law
1814 Ford Building
Detroit, Michigan

"*Dear Mr. Huhn:*

"Re: Vance D. Powell
*vs* Gilbert F. Beck, *et al.*

"Confirming our telephone conversation of today.

"Please be advised that Mr. Vance D. Powell has elected to accept your clients', namely, Gilbert F. Beck and Frank Sliwinski, offer to sell their combined and respective individual interests of every nature whatsoever in and to the assets of a going business commonly known as Jefferson Convalescent Home located at 3735 East Jefferson avenue, Detroit, Michigan, for the sum of $30,188.34 cash.

"Also inclosed please find a check in the amount of $2,500 payable to the order of Gilbert F. Beck and Frank Sliwinski as an earnest-money deposit and which deposit is to be applied upon the purchase price upon the consummation of the sale.

"Also it is my further understanding that you will meet with Mr. Powell and myself at my office on Monday, November 30, 1959, at 2 p. m. to work out all the details of the various agreements and conveyances that will be necessary for our respective clients to execute to consummate the purchase, terminate the partnership and dismiss the court proceedings.

"Sincerely yours,
/s/ *Francis D. Cooley*
Francis D. Cooley

FDC/GP
Incl./Check for $2,500."

In proceedings based upon a subsequently filed supplemental bill of complaint, the chancellor ruled that the 2 letters quoted above constituted a binding contract between plaintiff and the defendants and ordered its specific performance. Defendants appeal, claiming that their attorney's letter was not an offer but was, instead, only an invitation to negotiate further. We agree and, because we do, we do not consider it necessary to discuss other claims of error urged upon us by appellants.

Assuming, without deciding the issue, that defendants' counsel had authority to make an offer binding upon them, the last sentence of his letter must be disregarded completely if it is to be construed as an offer to buy or to sell. That sentence expressly invites negotiation on the basis stated; it expressly contemplates further dealings between the parties before settlement is reached. Even if we were to assume that what preceded was sufficient, under the circumstances, to constitute a valid offer, the last sentence manifests an intent that it be not so considered until further negotiations occur. But under the circumstances of this case, we are not prepared to say that what preceded was sufficient to constitute a valid offer.

Had the business been operated in corporate form, perhaps the simple statement, "I will buy your interest for $10,000 or sell you mine for $30,000," would be legally sufficient to constitute a valid offer for the purchase or sale of an interest represented by shares of capital stock. However, this business was operated as an informal joint venture, perhaps as a partnership, between the 3 parties. The real estate was in the name of only 1 of the parties. Each contributed some services, but not equally. Their capital contributions were unequal. Their relationship was indefinite and uncertain, no agreement having been reached with reference to compen-

sation for services and other matters of similar importance.

Under such circumstances, it cannot be determined from the purported offer what it was proposed to buy or to sell. Were liabilities to be assumed by the purchaser? The letter does not say. What about obligations of the business to the parties for their past services? If the sellers' interests in current profits were to be bought or sold, who would pay income tax thereon? If such interests in profits of the business were not included, how were they to be determined, and as of what date? With reference to these matters the letter was silent.

Furthermore, the letter was silent as to other matters of a different nature but of potentially equal significance to buyer and seller alike. What instruments of transfer would be required? Were the name and good will to be included? If so, how was that to be accomplished? There was cash on hand and in the bank when the letter was written. What use was to be made of the cash pending consummation of the sale or purchase? These, and many other like matters, were unmentioned in the letter. From the proofs offered the chancellor, it is apparent that at least some of these matters were discussed by the parties preceding the mailing of the defendants' counsel's letter, but no agreement appears to have been reached with respect to any of them.

We deal here with the sale or purchase of interests in a going business, not of staples or stock. The complexities of such transactions in the business community as it exists today, and as it has for many years, does not permit us to apply general principles of contract law without consideration of the facts of business life. Wholly apart from the qualifying language of the last sentence, we hold that, as a matter of law, defendants' counsel's letter was so indefinite and uncertain with respect to details essential

to an agreement that it did not constitute a legally sufficient offer to buy or sell interests in a going business.

See *Blanchard* v. *Detroit, L. & L. M. R. Co.,* 31 Mich 43, at p 53 (18 Am Rep 142) ; 1 Williston, Contracts (3d ed), § 27; and 49 Am Jur, Specific Performance, § 22.

Reversed and remanded for further proceedings. Costs to appellants.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred.