Robinhorne Construction Corporation and Red Arrow Construction, Inc., Plaintiffs-Appellants, v. Jack O. Snyder and Peoples Bank of Bloomington, Illinois, as Trustee Under McLean County Land Trust No. D-161, Defendants-Appellees.

Jack O. Snyder, Counterclaimant-Appellee, v. Robinhorne Construction Corporation, Inc., Orin L. Robson, Red Arrow Construction, Inc., and United States Fidelity and Guaranty Company, Counterdefendants-Appellants.

Gen. No. 11,058.

Fourth District.

July 30, 1969.

Rehearing denied and supplemental opinion October 24, 1969.

Summers, Watson & Kimpel, of Champaign (Robert C. Summers, of counsel), Phillips, Phebus, Tummelson & Barth, of Urbana, and Sebat, Swanson & Banks, of Danville, for appellants.

Thomas, Mulliken & Mamer, of Champaign (Albert F. Manion and Carl J. Sinder, of counsel), and Dunn, Dunn, Brady, Goebel, Ulbrich & Hayes, of Bloomington (Merrick C. Hayes, of counsel), for appellees.

CRAVEN, P. J., delivered the opinion of the court.

This appeal is from judgments in two actions filed in the Circuit Court of Champaign County arising out of construction contracts for the erection of a Howard Johnson Motor Lodge in Urbana.

The first suit filed by Robinhorne Construction Corporation prayed for an accounting and damages from its join-venturer in the construction, Red Arrow Construction, Inc., and Orin L. Robson, and the owner, Jack O. Snyder. Snyder counterclaimed against the joint-venturers and their surety, United States Fidelity & Guaranty Company (U. S. F. & G.), claiming damages for breach of contract and for the costs of suit against the surety.

The second suit filed by Robinhorne and Red Arrow Construction, Inc., sought a temporary injunction to re-

strain the owner, Snyder, from completing construction of the motor lodge and to enforce a mechanic's lien against the property.

The two suits were consolidated for trial and heard by the court without a jury. After numerous hearings the trial court entered judgment against Robinhorne Construction Corporation and in favor of all defendants upon the first suit for an accounting and damages. On the counterclaim of the owner, Snyder, the court entered judgment against the contractors, Robinhorne, Red Arrow and Robson, and their surety, U. S. F. & G., in the amount of $159,832.64 with interest at six percent. Also, separate judgment on the counterclaim of the owner, Snyder, was entered against U. S. F. & G. for costs of suit including legal and accounting fees and expenses in the amount of $28,498.86 and interest. In the second suit a judgment was entered against the contractors and in favor of the owner Snyder.

The contractors and their surety appeal from the judgments on the counterclaim in the first suit and the contractors appeal from the judgment in the second suit.

The disposition of this appeal of the consolidated cases is dependent wholly upon the rights of the property owner and the contractors under the construction contract or contracts entered into by them. These rights involve determination of the basis of payment for construction and the termination provisions and completion by the owner Snyder under the applicable contract terms. The evidence is both detailed and conflicting, but so far as pertinent to the issues here on appeal, requires certain review.

The owner, Jack O. Snyder, and his trustee, Peoples Bank of Bloomington, in April of 1965, employed a licensed architect to prepare plans and specifications for a Howard Johnson motel and restaurant on the land of the owners in Urbana.

The architect prepared the plans and specifications, using document forms recommended by the American Institute of Architects for lump-sum bid construction contracts. These were put out for bid. No lump-sum bids having been received by bid date, the owners proceeded to negotiate a cost-plus contract with Robinhorne Construction Corporation as contractor.

On July 10, 1965, the owners and Robinhorne entered into a written construction contract prepared by the owners' attorney upon a 1951 form recommended by the American Institute of Architects for cost-plus contracts, but the general conditions, plans and specifications of the previous contract were not changed. This contract, by a rider attached to paragraph 4, provided that the owner Snyder pay the contractor the cost of construction plus a six percent fee, but that the cost-plus six percent should not exceed $1,018,700.

Thereafter, difficulties arose in the ability of the contractor Robinhorne to provide a performance bond and in the cost of such bond. It also was learned by Robinhorne that it would be unable to perform the work. Thus, a supplemental agreement was made that Red Arrow Construction, Inc., would become a joint-venturer with Robinhorne and O. L. Robson.

The supplemental agreement also provided that the performance bond to be furnished by the joint-venturer contractors be reduced to $500,000 for the general contract work; that subcontractors be obtained for the mechanical, electrical, masonry, store-front and dry-wall portions of the building, who would furnish performance bonds for their respective portions of the contract; and that a new contract be entered into by all parties.

On October 19, 1965, the final construction contract was executed and backdated to July 10, 1965. It was prepared by the owners and their attorney and was on a 1963 American Institute of Architects form for a cost-plus contract. This contract provided that the owner

Snyder pay the contractors the cost of the improvements plus six percent, provided such total did not exceed $500,000, excluding the subcontracted work. This maximum of $500,000, plus the estimated subcontracted excluded work equaled the original contract price of $1,018,700. No change was made in the original plans and specifications and general conditions prepared for the proposed original contract. A rider attached to paragraph 5 of the final contract provided that the contractors were to receive an additional fee equal to one-half of the difference between the total cost of the project (including the contractors' six percent fee) and the previously agreed maximum price of $1,018,700, should the total costs be less than the maximum price.

Construction was undertaken and partially completed when the contractors advised the owner Snyder that the costs of construction would exceed the maximum contract price. The exact date the owner Snyder was informed of this situation is disputed. The contract had a completion date of February 1, 1966, but the construction still was incomplete in June of 1966, when meetings were had by the owner Snyder and various of the contractors. The cause of the delay also was disputed.

The contractors contend that they were substantially delayed in the work due to the failure of the owners to remove a preexisting building on a portion of the job site. Several of the contractors testified that the delay of some of the subcontractors delayed their work. Credit weakness of Robinhorne, causing delay in the delivery of materials, and the time which passed while Orin Robson was being persuaded to enter into the joint venture were additional causes asserted.

Certainly sometime during the June, 1966, meetings between the owner Snyder and the contractors it became apparent that the job was in financial difficulty. Discussions were had by the owner Snyder with representatives of the bonding company and considerable corre-

spondence passed between the parties as to completion and cost. The representatives of Howard Johnson Company threatened cancellation of the owner's lease and franchise agreement. During the latter days of June and the early part of July, 1966, the work proceeded at an extremely slow rate. Testimony was given that few, if any, workers remained on the job and that the construction superintendent had been taken off the job and sent back to Wichita, Kansas.

On July 11, 1966, Robinhorne filed its suit for accounting and damages against its joint-venturers and the owners. On July 18, 1966, the construction came to a standstill. On July 20, 1966, the owner Snyder delivered a copy of a notice of contract termination to Orin L. Robson and his attorney. Letters dated July 22 and 28, 1966, notified the bonding company of the contract termination.

In August, 1966, the contractors filed the second suit seeking to enjoin the owner Snyder from completing construction. This complaint later was amended for recovery from the owners of $88,148.55 as the balance due to reimburse the contractors for payments made by them, plus a fee of six percent of the cost of the work completed prior to the date of termination of the contract.

The contractors moved from the job site August 12, 1966. The owner Snyder then took over the job and completed it himself and did not rent any of the equipment from the contractors. The owner Snyder filed a counterclaim in the first suit filed for damages in the amount of the excess of the owner's completion costs over the alleged agreed contract price of $1,018,700.

■ While it is no longer necessary to the validity of a judgment or for review in a case either in equity or at law tried without a jury to make special findings (Ill Rev Stats 1967, c 110, par 64), in a complicated contract or accounting case, the trial court should at least make and file a memorandum opinion setting forth

the findings of fact and conclusions of law in arriving at its judgment. The trial court was requested to do so in the instant case but failed to file any such opinion. Hence, we must review the evidence and conjecture as to the basis of the judgments below.

Here sophisticated businessmen contracted for the construction of a large improvement. The changes in contract forms used as the basis of this construction with the retention of certain original plans and specifications and general conditions have resulted in most of the basic disputes of these proceedings.

■ It is our conclusion that the final contract entered into between the parties was a cost-plus contract with a maximum-price provision. A maximum-price provision is enforceable in Illinois. Wuellner v. Illinois Bell Tel. Co., 322 Ill App 284, 54 NE2d 853 (4th Dist 1944), affd, 390 Ill 126, 60 NE2d 867 (1945). In that case the Supreme Court referred to such a contract as "a guaranteed maximum cost contract." Such a contract, obviously, is neither a "lump-sum" contract nor a "cost-plus" contract as these terms are customarily used.

Having thus entered into a specially designed contract for this construction, we must look to the termination provisions agreed upon between the parties. Despite the provisions of Article 16 of the final agreement, the parties retained as a part of their contractual relationship the provisions of paragraph 18 of the "General Conditions" of the contract. The owner Snyder in terminating the contract elected to terminate under the provisions of paragraph 18 of the "General Conditions" as stated in the termination notice.

Paragraph 18 provided:

> "OWNER'S RIGHT TO TERMINATE CONTRACT
> "If at any time the contractor fails to comply with the provisions of the Contract, or if he becomes insolvent or insolvency or bankruptcy proceedings are instituted by or against him, or if he does

not act with promptness and diligence reasonably to warrant the expectation that the Contract shall be completed within the time limits as set forth in the Agreement, the Owner may immediately, without prejudice to any other right or remedy, evict the Contractor and take possession of the premises and of all materials, tools, and appliances thereon and furnish [sic] the work by whatever method he may deem expedient. In such case the contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract price shall exceed the expense of finishing the work including, but not limited to, compensation for additional managerial and administrative service, such excess shall be paid to the contractor. If such expenses shall exceed such unpaid balance, the contractor shall pay the difference to the Owner and such other damages as the Owner may have sustained."

Appellants contend that since Article 16 of the final agreement has a provision with reference to termination of the contract and that such provision states that it supersedes Article 22 of the "General Conditions," except the first sentence, and that General Condition 18 of the lump-sum contract form and General Condition 22 of the cost-plus contract form are identical as to their first sentence, termination can be only under Article 16 of the final agreement because that agreement provided that it should govern if the General Conditions and said agreement were inconsistent. Appellants then conclude that the remaining provisions of Article 16 of the final agreement control in the event of termination and require that the contractor be reimbursed for all payments made by it, plus six percent.

■■ We cannot agree with appellants' contentions. The final agreement makes no specific reference to any superseding of or change in the termination clause under

296

paragraph 18 of the General Conditions but only to an Article 22 of the General Conditions. To adopt the interpretation of these documents contended for by appellants would be to change the contract entered into between the parties and, in effect, write a new contract which the parties themselves did not make. This even the appellants concede cannot be done. The parties having agreed upon the contract under the documents here presented, it is not our province to make a different, better or worse one. Freeland v. Edwards, 11 Ill2d 395, 142 NE 2d 701 (1957). We thus must conclude that the owner Snyder could elect to terminate the contract under the provisions of paragraph 18 of the "General Conditions" as he did and that Article 16 of the final agreement did not exclusively control. This result is all the more conclusive when the contractual arrangement is viewed not simply as a cost-plus contract but when considered with its maximum-price provision and regarded as "a guaranteed maximum cost contract."

■ The evidence amply supports a failure of the contractors to comply with the contract provisions, particularly in completion date and delays, and failure to have sufficient workmen on the job. Further, the evidence is undisputed that the contractors were unable to complete the work within the maximum contract price. The owner Snyder, therefore, was justified in terminating the contract when he served the termination notice on July 20, 1966, and took over completion of the work, as the contractors had materially breached the contract.

■ Where a party has materially breached a contract, he cannot take advantage of terms of the contract which benefit him nor recover damages from the other party to the contract. Glenridge Coal Co. v. Marion County Coal Co., 205 Ill App 264 (1st Dist 1917); Consumers Mut. Oil Co. v. Western Petroleum Co., 216 Ill App 382 (1920). The contractors here clearly were not entitled to any damages or money judgment under general-con-

tract law nor under the terms of the contract as here provided.

■ ■ The evidence supports the damages awarded the owner Snyder on his counterclaim against both the contractors and their surety. The judgment entered by the trial court against the contractors and their surety amounted to the difference between the actual construction cost incurred by the owner Snyder and the agreed maximum contract price. This was the proper measure of damages upon termination under paragraph 18 of the "General Conditions." The judgment against the surety, based upon the terms of the surety bond which indemnified the owner Snyder as to "all and every . . . cost and fee of every description incurred in suits or otherwise against the said Obligee, . . ." is supported by the evidence as to his suit costs and expenses including litigation expenses, attorneys' fees, and costs of accountants, photographers and architects. The judgments of the trial court are correct.

Judgments affirmed.

SMITH and MILLS, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL
### OF
### PETITION FOR REHEARING

Upon consideration of the petition for rehearing, we have reexamined this appeal, particularly with reference to the points asserted to have been misapprehended or misunderstood. Certain specifics of the contractual provisions are discussed in this supplemental opinion.

We do not deem it controlling in interpretation of terms of a contract that the contracting parties have designated or entitled their contract as being one of a certain type, as "for use when the cost of work plus a fee forms the basis of payment" in the first agreement of July 10,

1965, or "where the basis of payment is the COST OF THE WORK PLUS A FEE" in the agreement signed September 21, 1965 (dated July 10, 1965) (hereinafter referred to as the "final agreement"). The parties here used standard-form contracts of the American Institute of Architects.

As we have previously stated, while the contracts were prepared by the architect and the owners' attorneys, the parties were sophisticated businessmen. The contractors were corporations which for some time had been actively engaged in the building and construction business. Under such circumstances, the usual rule in construction of contracts that ambiguities in a contractual provision or between provisions thereof are to be resolved against the owners who secured and prepared the contract, does not require us to set aside the determination of the trial judge as to the proper construction and interpretation of the contract.

Here the trial court's judgments must have been concluded from finding this contract to be a cost-plus contract with a maximum-price provision, written on standard forms of the American Institute of Architects and prepared by the owners' attorneys with specially designed and changed provisions.

We can interpret only the language of the contract as obtained from the documents signed by the parties. The rider to paragraph 4 of the first agreement and to paragraph 5 of the final agreement provided that the maximum cost price included a base-price figure of $788,000 and $269,960, respectively, plus bond cost of $5,290 and plus certain additional separate specified costs of certain specified items, and that if the actual costs of any specified items were greater or less than the specified amounts of each, the increment would be added or the difference (when less) deducted from the maximum cost price agreed upon in the contract. This provision might vary the maximum cost price to some extent, but it did

299

not change the fact that the parties agreed to a maximum cost price. In considering the contract, we are mindful of this provision for increase or reduction of the upset price.

It is evident that the parties' use of the standard architect form of contract by changing the usual price basis of cost, plus a fee, has rendered it necessary to construe the contractual meaning. Article 15 of the original agreement and Article 16 of the final agreement contain termination provisions. So does paragraph 18 of the General Conditions. Further, the contracts both provided that the architect's drawings and specifications, the General Conditions and the agreement were all parts of and constituted the contract; and that if anything in the General Conditions or Supplementary General Conditions was inconsistent with the agreement, the agreement should govern.

The agreements both provided that work commence August 1, 1965, and be substantially completed by February 1, 1966.

Article 16, the termination provision of the final agreement, provided that the provisions of Article 16 superseded all of paragraph 22 of the General Conditions except the first sentence. The abstract of record filed herein by appellants fails to include the entire General Conditions and their terms except as may be reflected in Plaintiff's Exhibit 18, which purports to be a copy of paragraph 22 of the General Conditions of the standard architect form of contract for the year 1965. Since the first agreement was on a 1961 form and the final agreement on a 1963 form, Plaintiff's Exhibit 18 assists us not at all.

Paragraph 22 is shown as a part of Plaintiff's Exhibit 1 in the supplemental abstract of record supplied by appellees. Paragraph 22 of the General Conditions in the contract between the parties in this case applies to

guaranty bonds and not to termination of the contract. We cannot conclude, however, that the trial court erred in determining that the provision of Article 16 of the final agreement superseding the first sentence of paragraph 22 of the General Conditions eliminated or modified paragraph 18 of the General Conditions, and that the terms of paragraph 18 of the General Conditions were not inconsistent with the terms of the final agreement as to termination. Hence appellee Snyder, the owner, had the right to and did terminate under the provisions of paragraph 18 of the General Conditions, and the undertakings in that paragraph control the payments to be made by the owner and contractors upon termination of the contract pursuant to that paragraph.

The owner's letter of July 19, 1966, notifying the contractors of termination of the contract, called attention to the contract completion date of February 1, 1966, and that such date was "long since past"; the tremendous cost to the owner by the delay in completion; the lack of completion due to the contractors' lack of coordination of the various subcontractors and their failure to have sufficient workmen on the job at all times; and that there was a substantial amount of work then yet to be done. The letter then notified the contractors of the owner's election to terminate the contract pursuant to the provisions of "Paragraph 18 of General Conditions of the Contract."

Under the provisions of paragraph 18 of the General Conditions, when the contractors failed to complete the contract by the contractual completion date and to have sufficient workmen on the job, certainly the owner was correct in assuming that the lack of promptness warranted expectation that the contract would not be completed within its time limit as that limit already had expired six months earlier at the time the letter of termination was sent. The contractors, under the provisions

of paragraph 18, were not entitled to receive from the owner any moneys for materials, services or labor expended by them prior to termination, but only to any sum that the unpaid balance of the contract price exceeded the expenses of finishing the work. Should the expenses of completion exceed the unpaid contract balance, the owner was entitled to such difference and to such other damages as he sustained. This, to us, was the plain and clear agreement of the parties. The evidence supports the trial court's judgment that there was an excess and other damages to the owner in the amount for which judgment was entered.

We adhere to our opinion as supplemented on denial of rehearing.