ROLAND E. CASATI, Plaintiff-Appellee, *v.* AERO MARINE MANAGEMENT COMPANY, INC., *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 59914

Opinion filed May 18, 1976.—Supplemental opinion filed on rehearing September 28, 1976.

Joseph B. Lederleitner, of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellants.

Petit and Safeblade, of Chicago (Edward Atlas, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This appeal involves an agreement to pay a broker's commission of $46,000 for producing an alleged unconditional offer to buy a building which would yield the seller a profit of $350,000. Plaintiff, Roland E. Casati, was a former officer and director of defendant, Aero Marine Management Company, Inc. (Aero). The circuit court, after a bench trial, entered judgment in favor of plaintiff.

On appeal the following issues are considered: (1) whether the finding that plaintiff procured an unconditional offer was against the manifest weight of the evidence, and (2) whether, if the finding was erroneous, plaintiff is nonetheless entitled to recovery on the basis of an anticipatory breach by defendants.

Plaintiff filed a complaint alleging an agreement was created on May 29, 1968, between Heritage Insurance Co. of America (Heritage) and plaintiff to supervise the construction of the Heritage Building (Building) in Lincolnwood, Illinois, to solicit prospective tenants for a certain set compensation, and, additionally, to solicit buyers for the Building entitling plaintiff to a "bonus." The relevant portion of the agreement, which is addressed to plaintiff, reads as follows:

"Sale of Building: You shall solicit, in a manner consistent with your judgment, the sale of the Building to prospective buyers, and all such sales or offers to purchase or sell, shall be subject to the approval of Heritage. In the event you shall have submitted an unconditional offer in writing with not less than forty-eight hours to accept, which offer shall be sufficient to allow a profit to Heritage of not less than $350,000 before closing costs, pro-rations and the bonus agreed to be paid to you, then you shall be deemed to have earned the sale bonus herein agreed to be paid to you whether such offer is accepted or not, and such bonus shall be paid within twenty days after the date such offer is submitted, if not accepted by Heritage."

The complaint further alleges the Building was sold to Aero, Heritage's parent company, after an agreement between Aero and plaintiff was entered into on November 26, 1968. By this agreement, plaintiff waived any rights to a bonus deriving from this sale in exchange for Aero's continuing to employ plaintiff under the May 29 agreement. The complaint further alleges plaintiff solicited prospective buyers including LaSalle National Insurance Co. (LaSalle) and submitted a written unconditional offer from LaSalle sufficient, pursuant to plaintiff's contract, to allow a profit of $350,000. The complaint goes on to assert LaSalle was a purchaser, ready, willing and able and that Aero became liable to plaintiff for a bonus of $46,000. In the complaint, just prior to the prayer for relief, plaintiff sets forth, in paragraph 9, an "alternative" theory that defendants anticipatorily breached plaintiff's "exclusive agency" to sell the Building as created by the May 29 and November 26 agreements. Defendants, in an amended answer, denied the allegations in paragraph 9 of the complaint.

At trial, defendants filed three motions in limine. One sought to exclude evidence on the issue of anticipatory breach on grounds plaintiff had not set forth his two causes of action in separate counts as required by the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 33(2)). A second sought judgment on the pleadings on this ground. A third sought to exclude parol evidence on the meaning of "unconditional" since no ambiguity had been pleaded. So far as we can determine from the record, the court ruled only on the motion in limine relating to parole evidence, denying that

motion. The evidence presented by the parties was limited solely to the unconditional offer issue.

Limiting ourselves to the facts pertinent to our resolution of this appeal, we consider the following evidence. A major portion of the trial was devoted to establishing the completion date of the Building and its cost as of that date in order to determine whether LaSalle's purported offer of $1,350,000 would allow Aero the required margin of profit of $350,000. A letter from Vincent Giacinto, the president of Aero, to the New York Life Insurance Co., the mortgagee of the Building, asserted that the Building was completed, including office space, on October 31, 1969. The stipulated exhibit indicates that the cost of the Building on that date was $943,457.51, including the cost of the land.

Offers of proof were made by various witnesses as to the meaning of "unconditional" in the contract. These witnesses alleged that, in the May 28, 1968, meeting of the board of directors of Heritage, at which this contract was discussed and approved, "unconditional" was inserted to obtain an "all cash offer," *i.e.*, one without financing. The court did not admit any of these offers, stating twice it saw nothing ambiguous about the term "unconditional," although in its findings the court did state that the letter constituted a "cash offer." The minutes of this meeting were, however, admitted into evidence and state that the word "unconditional" was inserted "to describe any written offer which might be received which would be sufficient to allow a profit to Heritage of not less than $350,000 * * *."

Documents admitted into evidence included the letter from LaSalle containing the purported offer, an attorney's letter to the president of Aero advising him that LaSalle's letter did not constitute an offer to purchase which was presented to the directors of Aero at their January 22, 1969, meeting, the minutes of the January 22 meeting at which the purported offer was rejected by Aero's board of directors, and Aero's letter of rejection to LaSalle. LaSalle's letter containing the purported offer initially stated plaintiff had presented the Building to them for purchase and then set forth their knowledge of the details of ownership and construction. The letter then advised Aero that LaSalle was "willing to purchase said real estate and improvements upon completion of the construction work (except for completion of certain tenants' work for space not then leased) at a price of $1,350,000. Tenants' work which comes within said purchase price will be completed after closing as space is leased." The letter continues on to require Aero to assign or cause to be assigned the benefits of a lease with Commonwealth Edison for parking space behind the Building and stated it was willing to negotiate a lease in the Building for Heritage as required by its mortgage agreement with New York Life Insurance Co. or substitute itself for Heritage as a tenant

in the required space. Further, LaSalle "anticipated" the Building would be delivered unoccupied, that guarantees and warranties would be made available to LaSalle, and that sale commissions would be paid by Aero. The letter then stated:

> "If the foregoing terms are acceptable to you, please notify the undersigned [the president of LaSalle] and we will immediately instruct our counsel to meet with you or your counsel, as you shall direct, for the purpose of drafting a full and complete contract acceptable to both parties."

Terms for payment in escrow upon execution were then specified and a closing paragraph extended LaSalle's "complete cooperation in furthering the transaction with a view towards as early a consummation as possible" requesting a response within three days.

The minutes of the January 22 meeting of Aero's board of directors disclose that a resolution to sell the Building to LaSalle in accord with their purported offer was defeated, a resolution stating the letter did not constitute an "unconditional offer" and therefore should be rejected was adopted, and that a proposed amendment to this latter resolution authorizing plaintiff to pursue LaSalle to see if an unconditional offer could be procured was defeated. Two motions, one that plaintiff be instructed not to contact LaSalle further and one that the Building not be sold at the present time, were both withdrawn. Plaintiff's resolution that LaSalle be informed in writing that Aero rejected their purported offer was passed and LaSalle was so informed.

Plaintiff made offers of proof that at the January 22 meeting the corporation attorney had warned the directors against including in the minutes their intention of withdrawing the Building from sale, which advice was, according to the offers, accepted. None of these offers were admitted into evidence. Defendants' attorney, however, in the hearing on their motion for summary judgment admitted several times that the Building was withdrawn from "the market," presumably in support of defendant's then pending counterclaim based on an alleged breach of fiduciary duty by plaintiff as director.

During closing arguments, the court asked the parties if it could consider the issue of anticipatory breach without further evidence, to which inquiry both parties responded in the affirmative. The court remarked later in the arguments, "I don't think there's any question here that there was an anticipatory breach. It seems to me to be a foregone conclusion." The trial court's findings and judgment made no mention of the anticipatory breach issue.

## I.

■■■ The initial issue to resolve is whether the finding that plaintiff procured an unconditional offer to purchase was against the manifest

weight of the evidence. In the letter quoted above, LaSalle indicated it would instruct its counsel, upon affirmative response from Aero, to meet with Aero or its counsel for the purpose of working out an agreeable contract. Where the offer contemplates action or deliberations beyond acceptance in order to create a binding contract, it is an offer to negotiate rather than an offer to purchase. (1 Williston on Contracts §27 (3d ed. 1957); *Dunlop v. Laitsch* (1962), 16 Wis. 2d 36, 113 N.W.2d 551; *Powell v. Beck* (1962), 366 Mich. 627, 115 N.W.2d 317.) In our opinion the portion of the letter from LaSalle to Aero, just referred to, proposed an agreement to agree, indicating the letter was an offer to negotiate. Thus, it is unnecessary to determine whether the offer was unconditional and allowed a profit of $350,000. This disposition also renders separate consideration of the cases cited by the parties regarding the unconditional nature of the purported offer unnecessary.

## II.

■■ The second issue presented for review is whether plaintiff, in light of our holding the letter not to have constituted an offer to purchase, is nonetheless entitled to recovery on the basis of an anticipatory breach by defendants. Before this issue can be considered, it must be determined whether it is properly before us for review. Plaintiff's complaint did not state the alleged cause of action for anticipatory breach in a separate count as required by section 33(2) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 33(2))[1]. Rather, plaintiff, used a one-count complaint to plead "alternative" theories. Paragraph 9 in itself is not sufficient to state a complete cause of action but does state one when read in light of the rest of the complaint[2]. Standing alone, paragraph 9 is defective in not having stated a complete cause of action either in itself or by incorporation by reference. Ill. Rev. Stat. 1971, ch. 110A, par. 134.

[1] Section 33 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 33) reads as follows:

"(1) All pleadings shall contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply. The common counts shall not be used.

(2) Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be and each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered, and each shall be divided into paragraphs numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation.

(3) Pleadings shall be liberally construed with a view to doing substantial justice between the parties."

[2] Paragraph 9 reads as follows: "9. In the alternative, Aero also breached said agreements dated May 29, 1968 and November 26, 1968 by adopting on January 22, 1969, a corporate resolution that said property be not sold at a price of $1,350,000.00 (a price which is 'sufficient to allow a profit to Heritage of not less than $350,000.00 before closing costs, prorations and the bonus agreed to be paid') although the exclusive agency of Plaintiff for the sale of said property does not expire until April 28, 1969. Said action of Aero constitutes an anticipatory breach of said agreements."

Defendants, in their answer and motion for summary judgment, responded to the merits of paragraph 9 rather than challenging the sufficiency of the complaint's compliance with section 33(2) of the Civil Practice Act or any other portion of that Act. Only after the motion for summary judgment was denied and the case was set for trial did defendants file their three motions in limine[3] seeking the exclusion of evidence on anticipatory breach and of parol evidence on the meaning of "unconditional" and judgment on the pleadings on the anticipatory breach issue. In these motions regarding anticipatory breach, defendants did challenge the plaintiff's failure to comply, in his complaint, with section 33(2). It has long been the law in Illinois that defendants admit the sufficiency of the counts by pleading to the general issue and that motions to exclude evidence are not the proper vehicles for challenging the legal sufficiency of complaints. (*Swift & Co. v. Rutkowski* (1899), 182 Ill. 18, 23-24, 54 N.E. 1038; *Illinois Central R.R. Co. v. Leiner* (4th Dist. 1902), 103 Ill. App. 438, 447, *aff'd*, 202 Ill. 624, 67 N.E. 398.) In our opinion defendants have waived any defect in the complaint.[4]

Since defendants waived the defect in plaintiff's complaint, nothing prevents this court from proceeding to the merits of the anticipatory breach issue, except the lack of a finding as to it in the trial court.

The record clearly indicates that the trial court, at the close of oral argument, discussed with counsel whether it should rule on the anticipatory breach issue. A fair reading of the colloquy suggests that counsel did not insist on a ruling, but rather were willing to wait for the court's ruling on the unconditional offer issue. The trial court did not mention the anticipatory breach issue in its findings and judgment. Consequently, in our opinion, this case should be remanded to the trial court for the purpose of resolving the anticipatory breach issue consistent with the views expressed herein.

■■ Since we are remanding, it may be appropriate to note, in regard to the rejected offers of proof as to the January 22 meeting that, where the object is to show that a contract has been abrogated, cancelled or surrendered, the question is one for the trier of fact and parol evidence is not barred from admission. *Alschuler v. Schiff* (1896), 164 Ill. 298, 304, 45 N.E. 424; *Selimos v. Marinos* (1st Dist. 1944), 323 Ill. App. 144, 149-51, 54 N.E.2d 836.

We, therefore, reverse the judgment of the circuit court of Cook

---

[3] A motion in limine is a pretrial or preliminary motion to secure the exclusion of prejudicial evidence which a party anticipates may be offered. See Hunter, Trial Handbook for Illinois Lawyers §8:4, at 77 (4th ed. 1972).

[4] In *Adams v. J. I. Case Co.* (4th Dist. 1970), 125 Ill. App. 2d 388, 399, 261 N.E.2d 1, the court held that numerous causes of action pleaded in the same count, although technically not in conformity with section 33(2) of the Civil Practice Act, should not be considered fatal in view of the liberal construction to be accorded pleadings.

County and remand the cause to that court for further proceedings consistent with the views expressed herein.

Judgment reversed and remanded.

STAMOS, P. J., and HAYES, J., concur.

## SUPPLEMENTAL OPINION ON REHEARING

Mr. JUSTICE DOWNING delivered the opinion of the court:

We allowed plaintiff's petition for rehearing[1] upon the suggestion that we had misapprehended the record when we held in our original opinion (section II) that the trial court had not ruled on the anticipatory breach issue. In other words, plaintiff in the petition for rehearing urged that the trial court's judgment in favor of plaintiff "includes the adjudication of anticipatory breach and the assessment of damages for lost profits." In granting the petition, we ordered " * * * that any additional portion of the trial court record pertinent to the anticipatory breach issue not previously filed in this court shall be filed by the Plaintiff-Appellee with its reply brief." After the parties had filed an answer and reply, we were advised by the plaintiff " * * * that the full trial court record is on file in this court, and for such reason no additional portion of the trial court record need be filed."

After reviewing the petition, answer, reply, trial court record, and our opinion, we are of the opinion that plaintiff's petition is totally without merit, and the petition for rehearing was improvidently granted. Normally, under such circumstances, nothing further need be said. However, we feel the following comments are appropriate.

Two issues were before the trial court: (1) whether plaintiff submitted an unconditional offer, and (2) whether plaintiff was entitled to recovery on the basis of an anticipatory breach. The matter was heard by the trial court, without a jury, and consumed four trial days spread out over a period of four months. The trial of any case in such a manner presents difficult practical problems, not only for the parties and attorneys, but also for a busy trial court who has before it a number of cases involving a variety of issues. In this case the record clearly indicates that during the trial the parties initially and primarily were concerned with the first phase of the case, i.e., the unconditional offer. But, from time to time the trial court and parties would discuss the anticipatory breach matter. The record clearly indicates that the trial court, with the parties' agreement,

---

[1] Ill. Rev. Stat. 1975, ch. 110A, par. 367.

deferred final ruling on the anticipatory breach issue until the unconditional offer issue was resolved. In fact, on the last trial day counsel for plaintiff said:

"[I]f you want to rule on this first thing, and then you don't have to go into anticipatory damages, if you rule in our favor."

At one point the trial court, while engaged in colloquy, commented, "I don't think there is any question here but that there was an anticipatory breach. It seems to me to be a foregone conclusion." The plaintiff now tries to elevate this comment to a final judgment. The observation of defendants in their answer is directly on point, "If the trial judge had ruled in favor of the plaintiff would not counsel for plaintiff have rushed to prepare and submit a written order to that effect? If defendants' motion for judgment on the pleadings had been denied would counsel for plaintiff have also failed to submit an order on that also?"

The only judgment entered, on November 2, 1973, by the trial court in this matter reads:

"The Court having heard the evidence, and having on October 29, 1973 filed its Findings and Opinion, the Court finds for plaintiff, ROLAND E. CASATI, and against defendants, GREATER HERITAGE CORPORATION, by change of name from AERO MARINE MANAGEMENT COMPANY, INC., and HERITAGE INSURANCE CO. OF AMERICA, and assesses plaintiff's damages in the sum of $56,852.00.

IT IS THEREFORE ORDERED AND ADJUDGED that plaintiff, ROLAND E. CASATI, do have and recover from the defendants, GREATER HERITAGE CORPORATION, by change of name from AERO MARINE MANAGEMENT COMPANY, INC., and HERITAGE INSURANCE CO. OF AMERICA, the sum of $56,852.00 and costs of suit, and that execution issue forthwith."

The trial court's findings and opinion is confined solely to the unconditional offer issue.

■■■ "Judgment," as defined in Supreme Court Rule 2, "also includes decree, determination, decision, order, or portion thereof." (Ill. Rev. Stat. 1975, ch. 110A, par. 2(b)(2).) A judgment is a court's determination of a controversy before it (23 Ill. L. & Pr. *Judgments* §2 (1956)) and is the court's last word in a judicial controversy. A final judgment is one which finally disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate branch thereof. (*Brauer Machine & Supply Co. v. Parkhill Truck Co.* (1943), 383 Ill. 569, 575, 50 N.E.2d 836.) As the supreme court said in *City of Chicago v. Coleman* (1912), 254 Ill. 338, 341, 98 N.E. 521, "* * * those orders of court which are made during the pendency of the suit are usually called orders while

the order which takes the form of the final judgment is termed a judgment, and there are cases where the distinction is material." The instant case was tried without a jury; therefore there was no jury verdict. In a bench trial the rendition of a judgment is the pronouncement by the trial court, followed by the clerk's ministerial act of entry of judgment on the record. A judgment must dispose of the issue in controversy in favor of one of the litigants, or the other, and as to the said issue, must show that the rights of the parties in litigation have been finally adjudicated. See *Kaybill Corp. v. Cherne* (1st Dist. 1974), 24 Ill. App. 3d 309, 315, 320 N.E.2d 598; 23 Ill. L. & Pr. *Judgments* §21 (1956).

■■ We next consider what formalities are needed for the trial court's findings. In *Robinhorne Construction Corp. v. Snyder* (4th Dist. 1969), 113 Ill. App. 2d 288, 294-95, 251 N.E.2d 641, *aff'd* (1970), 47 Ill. 2d 349, 265 N.E.2d 670, the court said:

> "While it is no longer necessary to the validity of a judgment or for review in a case either in equity or at law tried without a jury to make special findings (Ill Rev Stats 1967, c 110, par 64), in a complicated contract or accounting case, the trial court should at least make and file a memorandum opinion setting forth the findings of fact and conclusions of law in arriving at its judgment."

(Also see *Long v. Arthur Rubloff & Co.* (1st Dist. 1975), 27 Ill. App. 3d 1013, 1022, 327 N.E.2d 346.) In cases, such as this, involving multiple issues, it is very important for the trial court to always keep in mind the need to protect the record so that there can be no question, at any time, as to specifically what the trial court has considered and ruled on.

It has long been the law in this State that appeals will lie only from final judgments, orders, or decrees, except in the few instances expressly authorized by supreme court rule expressly providing for appeals from interlocutory orders. *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48, 147 N.E.2d 371.

With these principles in mind, we review and consider the entire record before us. As to the anticipatory breach issue, the plaintiff has not pointed out anything in the record which amounts to a final judgment. And, we can find nothing either.

■■ The record in this case clearly indicates that *no* final order or judgment was entered by the trial court on the anticipatory breach issue. For plaintiff's counsel to suggest otherwise and not be able to point to such in the record demonstrates an unfortunate lack of understanding of such a fundamental precept, or an attempt to improperly persuade this court of a nonexisting fact. Whatever the reason may have been, there is no merit to plaintiff's petition. The plaintiff's petition for rehearing is dismissed. We adhere to our original opinion.

■■ We think, however, that, in view of our remand for further proceedings consistent with the views expressed in our original opinion, we should clarify that original opinion as to precisely what it was that we held that defendants waived on the matter of anticipatory breach. We held that by their pleadings and by their agreement to defer the matter of anticipatory breach, defendants waived their objection that the complaint did not contain a count for anticipatory breach owing to violation of section 33(2) of The Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 33(2)). We did not hold that defendants waived the issue of whether that count, as pleaded, stated a legally sufficient cause of action for anticipatory breach in that it failed to allege the essential elements of such a cause of action. It is our view that, on remand, it will be mutually helpful both to the parties and the trial court for the parties to make a fresh start as to the count for anticipatory breach.

Hence, defendants may, if they see fit, move to strike the count for anticipatory breach for failure to state a cause of action. Should the count, as presently pleaded, be dismissed, the dismissal should be with leave to file an amended complaint for anticipatory breach within a reasonable time. This procedure will enable the parties to put in issue for the trial court the matter of what are the essential elements of a cause of action for anticipatory breach.

After plaintiff's petition for rehearing had been allowed, defendants filed a petition for rehearing alleging substantially the same position they had asserted in their answer to plaintiff's petition. We hereby deny defendants' petition for rehearing.

In summary then:

Plaintiff's petition for rehearing is dismissed.

Defendant's petition for rehearing is denied.

Judgment reversed and remanded.

STAMOS, P. J., and HAYES, J., concur.