**In re Milton SCHRAIBER, Debtor.**

**Alexander S. KNOPFLER, Trustee for Milton Schraiber, Plaintiff–Appellee,**

**v.**

**Milton SCHRAIBER, et al., Defendants–Appellants.**

**Nos. 90 C 3890, 87 B 17144.**

United States District Court, N.D. Illinois, E.D.

Sept. 12, 1991.

David Perry Leibowitz, Bruce Charles Dopke, Daniel Feldman, Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for plaintiff-appellee.

John Harold Redfield, Chicago, Ill., for defendants-appellants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

There are many ways to acquire wealth. For the vast majority of people, success is a combination of hard work and luck. This case, however, involves one of those rare situations where the road to wealth is paved with misfortune and mismanagement. There is only one force capable of producing such an anomalous result: the United States Bankruptcy Code. The question confronting this court on appeal is whether such a result can stand.

### Facts

On October 1, 1985, Richard Erlich signed a five year lease with the debtor, Milton Schraiber, to operate the Oak Mill shopping center. Under the lease, Erlich was required to make a $500,000 security deposit and pay his share of taxes and expenses. In addition, Erlich was required to pay $50,000 per month in rent. The lease also contained an option to purchase the mall so long as the closing of the sale was within 60 days of the exercise of the option.

From the inception of the lease, Erlich was in default. He underpaid his security deposit by $62,000 and paid only $40,000 per month in rent. In November of 1987, Erlich reduced his rental payments to $38,-000 per month. By 1990, he owed over $450,000 in back rent.

There is a silver lining to this story. In November of 1987, Schraiber filed for bankruptcy. His portfolio contained only one asset of significant value, Oak Mill Mall ("Mall"), and the only thing standing

between his creditors and the Mall was Erlich's option to purchase it. As fate would have it, Erlich found himself in a very favorable position. Unfortunately for Schraiber's creditors, Erlich was a formidable negotiator. He appreciated his position and pressed his advantage.

On July 17, 1989, the trustee of Schraiber's bankruptcy estate filed a motion to sell the Mall. A public auction was held and the high bid was 5.75 million dollars. All parties recommended its rejection.

The trustee's efforts to sell the Mall continued. On May 1, 1990, the trustee executed an agreement to sell the Mall to Oak Mill Enterprises ("Buyer") for 7.1 million dollars, contingent on the Buyer obtaining a new lease with Jewel. On May 25, 1990, the trustee presented three motions to the bankruptcy court: 1) leave to sell the Mall to the Buyer, 2) leave to appoint the Buyer as the exclusive managing and leasing agent of the Mall, 3) leave to compromise Erlich's rights under the lease, in exchange for Erlich's agreement either to the immediate termination of his lease, or to an assignment of his rights under the lease to a party of the trustee's choosing. The motion to enter the settlement with Erlich was granted on that same day.

Under the terms of the settlement, Erlich was to receive $438,000 from the proceeds of the sale. In addition, the estate was required to assume approximately $100,000 in liabilities which were the obligation of Erlich under his lease with Schraiber. Finally, Erlich was to be released from all of his back rent, an amount exceeding $450,000. The gravamen of this appeal is whether Erlich struck too good of a deal for himself.

### Discussion

To understand this appeal, it is essential to eliminate what is not at issue. There is no argument with the terms of the sale or the amount of proceeds it will generate. No one objects to the prospective purchaser, Oak Mill Malls. In fact, no one is suggesting that the sale should be aborted. The only relief being sought is that when the sale is consummated Erlich is given a smaller piece of the pie. Essentially, appellants want to have their pie and eat it to.

■ There is no gainsaying that Erlich found himself in a powerful bargaining position. Because there is no alleged improprieties, the court assumes that this was an arms length transaction. There is no better barometer of value than the price that the market bears. If it were not for the fact that this settlement is governed by the Bankruptcy Code, this court would not second guess a deal struck between sophisticated businessmen. Under the Code, however, this court is obligated to review settlements approved by the bankruptcy judge, albeit on an abuse of discretion basis. *In Re Emerald Oil Co.*, 807 F.2d 1234, 1239 (5th Cir.1987).

■ Before this court can reach the question of settlement, it must address whether this appeal is moot. The appellee argues that because the appellants have not sought a stay for the sale of the Mall, the status quo has been inalterably changed and this court can no longer grant any relief. See *In Re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981); *Central States, Southeast and Southwest Area Pension Fund v. Central Transport Inc.*, 841 F.2d 92, 96 (4th Cir.1988). The appellants counter that the appeal is not moot because this court has the power to prohibit all or a portion of the $438,000 in proceeds from being turned over to Erlich.

The thrust of the appellee's argument is that since the Mall has been sold to an innocent third party, Oak Mill Enterprises, the appeal is moot. Ample authority exists for the proposition. See *Fink v. Continental Foundry & Machine Co.*, 240 F.2d 369, 375 (7th Cir.1957); *In re Vetter Corp.*, 724 F.2d 52 (7th Cir.1983). This argument, however, is disingenuous. No one is asking this court to rescind the sale. In fact, it is apparent that all parties concerned are happy with the proceeds the sale will generate. Appellants are merely requesting that the proceeds be distributed in a different fashion. Under no circumstances will the relief sought jeopardize the rights of the Buyer. The question of mootness can

**132**

not turn on matters ancillary to the relief sought by the parties.

Because the sale is contingent on obtaining Jewel as an anchor tenant, the proceeds of the sale may be allocated differently than ordered by the bankruptcy court. There is room to maneuver without disturbing the rights of innocent third parties. While this court has the power to grant relief, it is not obligated to do so if the situation does not warrant.

█ That leaves this court with the question of whether the settlement should have been approved. A settlement should be approved if it is in the estate's best interest. *In Re American Reserve Corp.*, 841 F.2d 159 (7th Cir.1987). Unfortunately, the appellee has expended all of his energy on the issue of mootness, and thus has completely ignored the more fundamental question of whether the bankruptcy court abused its discretion in approving the settlement. More importantly, the bankruptcy court failed to make adequate findings supporting its conclusion to approve the settlement. Such findings are required. *Id.*

█ Without specific findings, this court is unable to reach the merits of this action. Therefore, this court remands this case to the bankruptcy court with directions to make findings on the appropriateness of the settlement. See *In Re American Reserve Corp.*, 841 F.2d 159 (7th Cir.1987); *In Re A & C Properties*, 784 F.2d 1377 (9th Cir.1986).[1]

For the forgoing reasons, this case is remanded to the bankruptcy court.

---

**1.** In their opening brief, appellants argue that Erlich is not entitled to take advantage of his option to purchase the Mall because he has materially breached on his lease with Schraiber. Although there is support for this argument, this court can not reach the merits until the bankruptcy court provides a more complete record. See *Robinhorne Const. Corp. v. Snyder*, 113 Ill. App.2d 288, 251 N.E.2d 641 (4th dist. 1969) ("Where a party has materially breached a contract, he cannot take advantage of terms of the contract which benefit him nor recover damages from the other party to the contract."). Obviously, the appellants' position would be considerably stronger if the bankruptcy court determines that Erlich has lost the right to exercise his option.